(Nos. 43974, 44449 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FRANK C. RIDENS *et al.,* Appellants.—THE CITY OF MOLINE, Appellee, v. LARRY WALKER, Appellant.

*Opinion filed March 21, 1972.—Rehearing denied May 25, 1972.*

DONALD M. RENO, Jr. of RENO, O'BYRNE & KEPLEY, of Champaign (ANGELO P. BRUSCATO and STANLEY J. LIPCZYNSKI, of counsel), for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and PHILIP G. REINHARD, State's Attorney, of Rockford (THOMAS J. IMMEL and FRED G. LEACH, Assistant Attorneys General, and GERALD W. LaFAYETTE, Assistant State's Attorney, of counsel), for the People.

JOHN DONALD O'SHEA, Corporation Counsel, of East Moline, for appellee City of Moline.

MR. JUSTICE DAVIS delivered the opinion of the court:

The appeals of Frank C. Ridens and Marilyn Keckler, a/k/a Norma Keckler from the judgments of the circuit court of Winnebago County and of Larry Walker from the judgment of the circuit court of Rock Island County, have been consolidated for argument and opinion. They raise identical issues pertaining to the sale of allegedly obscene

books. The publications involved were purchased by police officers from the defendants, Ridens and Keckler, in Rockford, and from the defendant, Walker, in Moline. Both Walker and Ridens owned the stores at which the respective publications were purchased. Marilyn Keckler was an employee of Ridens and operated a second store which was owned by him.

The defendants, Ridens and Keckler, were charged in two separate complaints with violating the Illinois obscenity provisions of the Criminal Code (Ill.Rev.Stat. 1969, ch. 38, par. 11—20(a)(1)) by selling or delivering certain allegedly obscene magazines entitled "Jaybird Scene No. 4," "New Cover Girl," "Female Photographs," "Fun and Games," "Secret Affair," "Lovers," and "Teenage Jaybird." The complaints against them were based upon the purchase of the magazines by the police officers of the city of Rockford. The defendants entered pleas of not guilty, waived trial by jury, and then filed motions to dismiss on the grounds that no adversary hearing on the question of obscenity prior to arrest was afforded them; that if obscene, the distribution of such publications to adults is constitutionally protected; that section 11—20(b) of the Code (Ill.Rev.Stat. 1969, ch. 38, par. 11—20(b)) is constitutionally infirm because it is vague and uncertain and fails to follow the decisions of the United States Supreme Court in its definition of obscenity; and that the complaint failed to state a criminal offense.

These motions were denied and the defendants were tried by the court. The only evidence introduced by the State pertained to the purchase of the offensive books and to the ownership of the Rand J. Book Stores by the defendant Ridens. The defendants were found guilty at the conclusion of all of the evidence. The defendant Ridens was sentenced to 60 days in jail and to pay a fine in the sum of $4,000, and the defendant Keckler, his employee, was sentenced to 10 days in jail and fined $400.

The defendant, Walker, was charged in one complaint

with having violated the Moline obscenity ordinance by selling an allegedly obscene magazine entitled "Tit Bits," and in a second complaint with selling another such obscene magazine entitled "Jaybird Era." He pleaded not guilty, waived trial by jury, and then filed a motion to dismiss each complaint in that these prosecutions violated his rights under the first, fifth and fourteenth amendments to the United States constitution and the complaints did not follow the guidelines established by the United States Supreme Court in obscenity cases, and, therefore, they failed to state a cause of action. Following the denial of his motion, the police officers of the city of Moline testifed that they purchased the magazines in question, and the offending magazines themselves were admitted in evidence. The city however, offered no expert or opinion evidence relating to community standards of obscenity. At the conclusion of the city's evidence, the defendant offered one nonexpert witness, whose testimony was of little value, in an attempt to establish that the magazines were in accord with the community standards of the city of Moline. The court found the publications to be obscene under the city ordinance, and fined the defendant $1,000.

The defendants have raised the same issues in both appeals. Their attacks upon the Moline obscenity ordinance and the Criminal Code obscenity provisions (Ill. Rev.Stat. 1969, ch. 38, pars. 11—20 through 11—22) may be disposed of rather summarily since we have previously held both to be constitutionally sound. See: *City of Moline v. Walker, 49 Ill.2d 392* (Moline ordinance), and *People v. Sikora, 32 Ill.2d 260* (the Criminal Code obscenity provisions). The Moline ordinance incorporates the obscenity standards established in *Roth v. United States, 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304. City of Moline v. Walker, 49 Ill.2d 392, 396, 397.*

Section 11—20(b) of the Criminal Code defines obscenity as follows: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that

is, a shameful or morbid interest in, nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs." (Ill.Rev.Stat. 1969, ch. 38, par. 11—20(b).) Under *Roth,* the materials must be "utterly without redeeming social value."

Section 11—20(c)(3) provides that in any prosecution for an offense under this section, evidence shall be admissible to show "[t]he artistic, literary, scientific, educational or other merits of the material, or absence thereof"; and section 11—21(b)(1) defines harmful material as follows: "Material is harmful if, to the average person, applying contemporary standards, its predominant appeal, taken as a whole, is to prurient interest, that is a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters, *and is material the redeeming social importance of which is substantially less than its prurient appeal."* (Emphasis ours.) Section 11—21(c) provides, among other things, that: "In prosecutions under this section, where circumstances of production, presentation, sale, dissemmation, distribution, or publicity indicate the material is being commercially exploited for the sake of its prurient appeal, *such evidence is probative with respect to the nature of the material and can justify the conclusion that the redeeming social importance of the material is in fact substantially less than its prurient appeal."* (Emphasis ours.)

In view of these provisions, we hold that the Criminal Code obscenity provisions equate the *Roth* requirement that the obscenity must be "utterly without redeeming social importance." Also see: *City of Chicago v. Kimmel, 31 Ill.2d 202, 204, 205.*

The defendants further claim that the obscenity ordinance and the Code provisions are deficient because

they should require proof that the offending publications have intruded upon the privacy of unwilling adults, or were sold to minors—two of three additional standards which the United States Supreme Court in *Redrup v. New York, 386 U.S. 767, 18 L.Ed.2d 515, 87 S.Ct. 1414,* appeared to have added to those created in *Roth.* However, we observed in *City of Moline v. Walker, 49 Ill.2d 392,* at page 395, as follows: "In *United States v. Reidel, 402 U.S. 351, 28 L.Ed.2d 813, 91 S.Ct. 1410,* the [U.S.] Supreme Court rejected the very restrictions which the defendant insists must be incorporated in statutory definitions of obscenity." We further noted at page 396 that the language of *Reidel* "*** in effect, overruled *Redrup* and leaves *Roth* intact without the *Redrup* restrictions." Thus, we find the defendants' argument, in this respect, without merit.

The defendants raise two additional arguments. They contend first, that the trial court should have directed a verdict for the defendants either at the close of the plaintiffs' case, or at the close of all the evidence, because the plaintiffs in each case failed to meet their burden of proof by establishing the constitutional standards for obscenity as required in *Roth.* The plaintiffs introduced in evidence only the offending publications, leaving the court in both instances the duty of determining whether the publications were obscene, without the aid of opinion testimony on community standards, or any substantial additional evidence. The defendants argue that this makes the court a self-appointed censor of published materials, in violation of the defendants' rights under the United States constitution.

While the courts of some other States have held a contrary view on this question, we have determined that no further proof of the *Roth* criteria, other than the offending publications themselves, is required. In *City of Chicago v. Geraci, 46 Ill.2d 576,* where no evidence was offered other than the publications themselves, at page

578, we stated: "In a case of this nature, the court must make an independent constitutional judgment as to whether the publications in issue are obscene or constitutionally protected. [Citations.]" And, in *City of Chicago v. Kimmel, 31 Ill.2d 202,* at page 206, we stated: "Defendant further contends that the proof of his guilt was deficient in that there was no evidence of contemporary community standards, that there was no evidence of the obscene content of the books, and the books were not read by the trial court, or by the jury in open court. Defendant offered no evidence relating to contemporary community standards, and in the absence of such evidence, the triers of fact 'are the exclusive judges of what the common conscience of the community is.' *(Roth v. United States, 354 U.S. 476, 490, 1 L.Ed.2d 1498, 1510.)*" This rationale would be accentuated in the case at bar since the publications are of a pictorial format only, or of such format with innocuous attendant prose. Thus, we hold that the plaintiffs met their burden of proof when they introduced in evidence the magazines, which consist almost exclusively of photographs.

Finally, the defendants claim that they were entitled to an adversary hearing on the question of whether, in fact, the offending publications were obscene, prior to the issuance of the warrants for their arrest. In support of this contention they cite numerous decisions which involved the seizure of books, magazines and films pursuant to the issuance of search warrants. In particular, the defendants cite *People v. Kimmel, 34 Ill.2d 578,* in which a conviction was reversed for just such a seizure.

We find the rationale of these cases inapplicable to the circumstances of the cases at bar. The cited cases involve the constitutional issue of prior restraint of the publications under the first amendment to the United States constitution. In the cases before us, no search warrants were issued, there was no seizure of all of the copies of the magazines in question, the arrests were made after sales of

the magazines to the police officers, not before, and the defendants' businesses were not interrupted. We find, therefore, that the defendants were not entitled to an adversary hearing on the question of obscenity prior to their arrest.

The remaining issue for consideration is the propriety of the trial court's judgment that these publications are obscene as a matter of law. The color photographs, of which these magazines are almost exclusively composed, portray nude males and females, engaged in seductive embraces, posed with their legs spread so as to focus attention on their genitals. Although none of the models portrayed is actually engaged in sexual activity, it is clear from some sequences of photographs that sexual activity is suggested and imminent. The models in many instances have their hands, or mouths, close to another's genitals, suggestive of abnormal sexual conduct. The females are posed with their heads close to the male sex organ, and vice versa. In some of the pictures, several of the naked males and females are photographed while lying on top of one another, and in other pictures, two females are shown suggestively embracing and fondling one male. In these pictures, the focal point is the genitals of the parties.

We find that the sole appeal of these magazines is to the prurient interests; the dominant theme of these publications is to a morbid interest in nudity and sex. The scenes shown and the detail in the photographs are patently offensive in that such depiction goes beyond the customary limits of candor in this State. Not one of these magazines has any literary or artistic merit and they are utterly without redeeming social value. They are all obscene.

The convictions of Frank C. Ridens, Marilyn Keckler, a/k/a Norma Keckler, and Larry Walker, are affirmed.

*Judgments affirmed.*