(Nos. 43974, ·44449 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FRANK C. RIDENS *et al.*, Appellants.— THE CITY OF MOLINE, Appellee, v. LARRY WALKER, Appellant.

*Opinion filed November 27, 1974.*

DAVIS, J., dissenting.

Donald M. Reno, Jr., of Reno, O'Byrne & Kepley, of Champaign, for appellants.

William J. Scott, Attorney General, of Springfield, and Philip G. Reinhard, State's Attorney, of Rockford (James B. Zagel and Raymond McKoski, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Frank C. Ridens and Marilyn Keckler, a/k/a Norma Keckler, appealed to this court from judgments of the circuit court of Winnebago County entered upon their being found guilty of obscenity (Ill. Rev. Stat. 1969, ch. 38, par. 11—20). Defendant Larry Walker appealed from the judgment of the circuit court of Rock Island County which found him guilty of violating the obscenity ordinance of the City of Moline. The cases were consolidated for argument and opinion, and the judgments were affirmed. (*People v. Ridens,* 51 Ill.2d 410.) The Supreme Court of the United States granted *certiorari,* vacated the judgment of this court, and remanded the cause "for further consideration in light of *Miller v. California,* [413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607] ***." (413 U.S. 912, 37 L. Ed. 2d 1030, 93 S. Ct. 3046.) On remand we ordered the filing of supplemental briefs "limited exclusively to the constitutionality of Ill. Rev. Stat. (1969), Ch. 38, par. 11—20, in light of the judgment of the United States Supreme Court in *Ridens, et al. v. Illinois,* 413 U.S. 912, 93 S. Ct. 3046 (1973), and whether or not the appellants' convictions should be affirmed after the remand." The facts are adequately set forth in our earlier opinion and will not be restated here.

In two separate complaints, defendant Ridens, owner of two stores in Rockford, and defendant Keckler, his employee, were charged under the obscenity statute with the sale of allegedly obscene magazines. The circuit court found defendants guilty, fined them, and imposed jail sentences.

Defendant Walker, in two separate complaints, was charged under the Moline obscenity ordinance with the sale of obscene magazines. In a bench trial he was found guilty and fined.

Defendants contend first that the obscenity statute and the Moline obscenity ordinance are overbroad and

vague and violate defendants' rights under the first and fourteenth amendments to the Constitution of the United States. The People contend that, as "heretofore authoritatively construed," the obscenity statute, as required by *Miller v. California,* "defines with particularity the kinds of specific sexual conduct which can be found obscene." The People argue alternatively that if this court finds that the obscenity statute "has not been previously construed to incorporate the *Miller* standard, the Court can and should now" so construe it.

In *Miller,* the Supreme Court said:

"\*\*\* State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc. v. Dallas, supra,* [390 U.S. 676,] at 682-685, [20 L. Ed. 2d 225, 230-2, 88 S. Ct. 1298, 1302-5 (1968).] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* [408 U.S. 229,] at 230, [33 L. Ed. 2d 312, 315, 92 S. Ct. 2245, 2246 (1972),] quoting *Roth v. United States, supra,* [354 U.S. 476,] at 489, [1 L. Ed. 2d 1498, 1509, 77 S. Ct. 1304, 1311 (1957),] (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically de-

fined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. \*\*\*

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra*:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Miller v. California,* 413 U.S. 15, 23-5, 37 L. Ed. 2d 419, 430-1, 93 S. Ct. 2607, 2614-15.

In pertinent part the Illinois obscenity statute provides:

"(a) Elements of the Offense.

A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene; or

\* \* \*

(3) Publishes, exhibits or otherwise makes available anything obscene; or

\* \* \*

(5) Creates, buys, procures or possesses obscene matter or material with intent to disseminate it in violation of this Section, or of the penal laws or regulations of any other jurisdiction; or

(6) Advertises or otherwise promotes the sale of material represented or held out by him to be obscene, whether or not it is obscene.

(b) *Obscene Defined.*

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.

(c) Interpretation of Evidence.

Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience.

Where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that material is being commercially exploited for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance.

In any prosecution for an offense under this Section evidence shall be admissible to show:

(1) The character of the audience for which the material was designed or to which it was directed;

(2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would probably have on the behavior of such people;

(3) The artistic, literary, scientific, educational or other merits of the material, or absence thereof;

(4) The degree, if any, of public acceptance of the material in this State;

(5) Appeal to prurient interest, or absence thereof, in advertising or other promotion of the material;

(6) Purpose of the author, creator, publisher or disseminator."

The Moline ordinance in pertinent part provides that a person commits obscenity when within the City of Moline he sells, offers or attempts to sell, distributes, gives away,

offers to or attempts to give away prints or publishes an obscene book, magazine, pamphlet, paper, photograph, drawing, motion picture, film, phonograph record, film strip or slide.

> "Section 2. A thing is obscene for purposes of this Ordinance when to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest; that is,
>
> a) That the dominant theme of the material taken as a whole appeals to a prurient interest in sex, and
> b) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of the sexual nature, and
> c) The material is utterly without redeeming social value."

"It is a basic principle of due process that 'An enactment is void for vagueness if its prohibitions are not clearly defined.' " *Grayned v. City of Rockford,* 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298.

"The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court. As was said in *United States v. Harriss,* 347 U.S. 612, 617, [98 L. Ed. 989, 996, 74 S. Ct. 808, 812]

> 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'

Thus we have struck down a state criminal statute under the Due Process Clause where it was not 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its

penalties.' *Connally v. General Const. Co.*, 269 U.S. 385, 391, [70 L. Ed. 322, 328, 46 S. Ct. 126, 127.] We have recognized in such cases that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law,' *ibid.*, and that 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' *Lanzetta v. New Jersey*, 306 U.S. 451, 453, [83 L. Ed. 888, 890, 59 S. Ct. 618, 619]." *Bouie v. City of Columbia*, 378 U.S. 347, 350-1, 12 L. Ed. 2d 894, 898, 84 S. Ct. 1697, 1701.

A statute which may be lacking in neither clarity nor precision is void for overbreadth if it offends the constitutional principle "that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See [*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463-464, 2 L. Ed. 2d 1488, 1500-1501, 78 S. Ct. 1163, 1172-1173.] '*** [T]he power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom.' *Cantwell v. Connecticut*, 310 U.S. 296, 304, [84 L. Ed. 1213, 1218, 60 S. Ct. 900, 903.] '*** [E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' " *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307-308, 12 L. Ed. 2d 325, 338, 84 S. Ct. 1302, 1314.

Against this background we must determine whether the obscenity statute withstands the charges of vagueness and overbreadth. We consider first whether the statute as written or "authoritatively construed" defines, with sufficient specificity, the "community" by whose contempo-

rary standards the allegedly obscene material must be tested to determine whether "the average person applying those standards, "would find that the work taken as a whole appeals to the prurient interest." It is clear that the States are free to choose to define the "community" in precise geographic terms (*Jenkins v. Georgia,* 418 U.S. 153, 157, 41 L. Ed. 2d 642, 648, 94 S. Ct. 2750, 2753), and this Illinois has done. In *People v. Butler,* 49 Ill.2d 435, 438, we held that "the statute [section 11—20 of the Criminal Code of 1961] contemplates the application of a statewide standard ***."

We consider next whether the obscenity statute is impermissibly vague. Although not phrased in the exact language of *Miller,* the basic essential element of the statutory offense is that the material "appeal to the prurient interest." The statute specifically includes within the scope of "the prurient interest" a "shameful or morbid interest in nudity, sex or excretion."

A statute or ordinance designed to regulate many types of activities must frequently be couched in general terms. In rejecting the contention that the "anti-noise" ordinance of the city of Rockford was impermissibly vague and upholding its validity, the United States Supreme Court said: "Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' *Esteban v. Central Missouri State College,* 415 F.2d 1077, 1088 (CA8 1969) (Blackmun, J.), cert. denied, 398 U.S. 965, [26 L. Ed. 2d 548, 90 S. Ct. 2169] (1970), but we think it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-229, 92 S. Ct. 2294, 2300.

In *People v. Raby,* 40 Ill.2d 392, in rejecting the contention that sections 26—1(a) and 31—1 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, pars. 26—1(a) and 31—1) were invalid by reason of vagueness and

overbreadth, this court said at page 396: "It is true that section 26—1(a) does not attempt to particularize all of the myriad kinds of conduct that may fall within the statute. The legislature deliberately chose to frame the provision in general terms, prompted by the futility of an effort to anticipate and enumerate all of the methods of disrupting public order that fertile minds might devise." Considered in the light of *Grayned* and *Raby* we do not find the statutory definition of obscenity to be unconstitutionally vague.

We consider next defendants' contention that the statute is overly broad. In order that a statute be held overbroad the overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (*Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2918.) We do not find section 11—20 to be overbroad.

What we have said concerning the alleged vagueness and overbreadth of the obscenity statute is applicable to the Moline obscenity ordinance, and we find it to be neither impermissibly vague nor overbroad.

We have previously construed both section 11—20 of the Criminal Code (*People v. Ridens,* 51 Ill.2d 410) and the Moline obscenity ordinance (*City of Moline v. Walker,* 49 Ill.2d 392) to provide the same tests of obscenity as are found in *Roth v. United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. Both the statute and ordinance, as written, are framed in the terms of *Memoirs v. Massachusetts,* 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975, in which the Supreme Court said: "We defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S., at 489, [1 L. Ed. 2d at 1509, 77 S. Ct. at 1311]. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material

taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." (383 U.S. 413, 418, 16 L. Ed. 2d 1, 5, 86 S. Ct. 975, 977.) We need not and do not attempt to analyze the changes from the three-part *Roth-Memoirs* standard effected by the enunciation of the three-part *Miller* standard. It suffices to, and we now construe section 11—20 of the Criminal Code and the Moline obscenity ordinance to incorporate parts (a) and (b) of the *Miller* standards.

Part (c) of the *Miller* standard however presents a situation different from parts (a) and (b). As stated above, section 11—20 and the ordinance are drawn to include the three-part test enunciated in *Memoirs,* part (c) of which provides that to be obscene, the material must be "utterly without redeeming social value." Part (c) of neither the *Memoirs* nor the *Miller* test requires definition, and, indeed, defendants do not contend that these provisions of the statute or ordinance present any problem. Clearly the test of *Miller* is more restrictive than that of *Memoirs* and subjects to regulation matters which under *Memoirs* could not be held to be obscene. The statute and ordinance, however, are to be interpreted in the light of the language which they contain, and insofar as this "basic guideline" of *Miller* is concerned, the test of obscenity is that provided in the statute and ordinance.

In *Jacobellis v. Ohio,* 378 U.S. 184, 190, 12 L. Ed. 2d 793, 799, 84 S. Ct. 1676, 1679, it was stated: "[W]e reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." (See also *Cox v. Louisiana,* 379 U.S. 536, 545, 13 L. Ed. 2d 471, 478-479, 85 S. Ct.

374

453, 459.) In *Jenkins v. Georgia,* 418 U.S. 153, 163-64, 41 L. Ed. 2d 642, 652, 94 S. Ct. 2750, 2756, in a separate opinion, Mr. Justice Brennan said: "After the Court's decision today, there can be no doubt that Miller requires appellate courts—including this Court—to review independently the constitutional fact of obscenity. Moreover, the Court's task is not limited to reviewing a jury finding under part (c) of the *Miller* test that 'the work, taken as a whole, lack[ed] serious literary, artistic, political, or scientific value.' 413 U.S., at 24. *Miller* also requires independent review of a jury's determination under part (b) of the *Miller* test that 'the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law.' "

It is, of course, unfortunate, that the requisite "making of an independent constitutional judgment" in cases involving obscenity requires so great an expenditure of judicial time. The situation is, however, that except that the contending forces appear to become so much more emotional concerning the issues, obscenity cases present precisely the same problems relating to rights under the First Amendment as do the cases involving peace disturbance and disorderly conduct. In view of the inability of the appellate tribunals to clearly delineate the principles applicable to these latter types of cases it appears that perhaps we bemoan too greatly our inability to more clearly define the permissible scope of regulation of obscenity.

Having determined that the statute is constitutional, we consider next defendants' contention that even if this court were "to authoritatively construe the statute within the meaning of *Miller*" the construction could only be applied prospectively and that "traditional notions of due process would prohibit a retroactive application" of that construction.

Our holding that section 11—20 of the Criminal Code and the Moline obscenity ordinance are construed to

incorporate parts (a) and (b) of the *Miller* rather than the *Memoirs* standards may not be applied retroactively if to do so renders their construction less favorable to defendants. (*People v. Patton,* 57 Ill.2d 43, 48.) In our opinion the changes do not have that effect, and we find no impediment to the retroactive application of the statute and ordinance as now construed.

We turn now to the question whether under the statute and ordinance, as now construed, the magazines are obscene. In our earlier opinion (51 Ill.2d 410, 417) we described the photographs contained in the magazines and we need not do so again. We hold that the magazines are obscene, that their sale violated the statute and ordinance, and the judgments are affirmed.

*Judgments affirmed.*

MR. JUSTICE DAVIS, dissenting:

The majority opinion on remand sets forth the progress of this litigation from the circuit courts of Rock Island and Winnebago Counties, Illinois, to the United States Supreme Court. It holds that section 11—20 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) and section 2 of the Moline obscenity ordinance are constitutional as therein construed; that they incorporate parts (a) and (b) of the *Miller* standards; and further holds that the changes in the standards from *Memoirs* to *Miller* afford no impediment to the retroactive application of the statute and ordinance, as construed. I disagree with the majority view and conclusions.

I would reverse the judgments and hold the enactments in question to be unconstitutional in the light of the pronouncements of *Miller v. California* for the reasons hereinafter stated.

After conviction in the trial court, the Ridens, Keckler and Walker cases were consolidated on appeal in this court, for argument and opinion; the constitutionality of the obscenity enactments was upheld, and the judgments of

conviction were affirmed. (*People v. Ridens* (1972), 51 Ill.2d 410.) However, the United States Supreme Court vacated our judgments, and the cases were remanded to this court for further consideration in the light of *Miller v. California.*

*Miller v. California* (1973), 413 U.S. 15, 24-25, 37 L. Ed. 2d 419, 430-431, 93 S. Ct. 2607, 2614-2615, established the following principles for use in determining whether a work may be considered obscene:

> "As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.* [Emphasis mine.]
>
> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin,* [408 U.S. 229, at 230, 33 L. Ed. 2d 312, at 315, 92 S. Ct. 2245, at 2246 (1972)], quoting *Roth v. United States*, [354 U.S. 476, at 489, 1 L. Ed. 2d 1498, at 1509, 77 S. Ct. 1304, at 1311 (1957)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the '*utterly* without redeeming social value' test of *Memoirs v. Massachusetts,* [383 U.S. 413, at 419,

16 L. Ed. 2d 1, at 6, 86 S. Ct. 975, at 977 (1966)] ; that concept has never commanded the adherence of more than three Justices at one time." See 413 U.S. at 21, 37 L. Ed. 2d at 429, 93 S. Ct. at 2613.

In *Hamling v. United States* (1974), 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887, the United States Supreme Court held that obscenity defendants whose convictions were on appeal at the time *Miller* was decided must receive the benefits of any constitutional ruling announced therein.

Both the Illinois obscenity statute and Moline ordinance incorporate the *Roth-Memoirs* test, *i.e.,* that the material must be "utterly without redeeming social importance." The *Miller* test seems to reduce the first-amendment protection from that under the *Roth-Memoirs* test, and thereby expand the scope of works or materials which are not subject to regulation, by substituting for it the requirement that the material alleged to be obscene, taken as a whole, lacks "serious literary, artistic, political, or scientific value."

The defendants herein were tried under the *Roth-Memoirs* standards. (*Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304; *Memoirs v. Massachusetts* (1966), 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975.) These standards included as part of the tripartite guideline the requirement that the material in question be "utterly without redeeming social importance." Thus, to sustain a determination as to obscenity under *Memoirs,* this criteria would be met only if the matter in question is "utterly without redeeming social importance." Under *Miller,* if there is some social importance, be it artistic, literary, political or scientific, no matter how slight, the material should not be condemned as obscene. See Notes and Comments, *Miller v. California: A Cold Shower for the First Amendment,* 48 St. John's L. Rev. 568 (1974).

Thus, the enactments as drafted and as heretofore

construed by this court are more restrictive than the new basic standards or guidelines laid down by the United States Supreme Court in *Miller,* so as to expand the scope of work and materials that are not subject to the first-amendment regulation. *Commonwealth v. Horton* (1974), —— Mass. ——, 310 N.E.2d 316.

Our decisions herein cited have not construed the enactments in question so as to meet the lesser constitutional requirements of *Miller.*

In considering the subject of obscenity, it is well to note that neither the enactments under consideration, the decisions of this court, nor of the United States Supreme Court, condemn sex or nudity as such, but only works or materials pertaining thereto which appeal to the prurient interest and which are patently offensive.

The question of whether obscenity is within the protection of the first amendment to the United States Constitution, or whether it should not be so protected, is not at issue. The Supreme Court and this court have regularly and consistently held that traffic in obscene materials lies beyond the limits of first-amendment coverage. See *Miller v. California* (1973), 413 U.S. 15, 21, 23, 37 L. Ed. 2d 419, 428, 430, 93 S. Ct. 2607, 2613, 2614; *Kois v. Wisconsin* (1972), 408 U.S. 229, 230, 33 L. Ed. 2d 312, 314-315, 92 S. Ct. 2245; *United States v. Reidel* (1971), 402 U.S. 351, 353, 28 L. Ed. 2d 813, 816, 91 S. Ct. 1410; *City of Chicago v. Kimmel* (1964), 31 Ill.2d 202, 204; *People of Blue Island v. DeVilbiss* (1968), 41 Ill.2d 135, 142; *People v. Sikora* (1965), 32 Ill.2d 260, 264.

The focus of the defendants' argument was not directed at part (a) of the *Miller* test, but rather at part (b). Simply put, defendants argue that neither obscenity enactment before us sets forth, in a descriptive manner, those forms of sexual conduct that may be deemed patently offensive. The defendants further argue that this court has never construed the Illinois obscenity statute or any related ordinances in a definitive manner so as to meet

the requirements of part (b) of *Miller*. Accordingly, defendants conclude that both enactments are void for vagueness and overbreadth. For these and other reasons herein stated, I agree.

Under *Miller*, as I understand it, State statutes and municipal ordinances designed to regulate the depiction or description of sexual conduct are confined to works which depict or describe such conduct, and that conduct must be specifically defined in such enactments, as written or authoritatively construed. The offense must be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way and which, taken as a whole, do not have serious literary, artistic, political or scientific value.

An examination of the enactments in question, which are set forth in the majority opinion, will reveal that they do not meet this requirement of *Miller*. Additionally, this court had never, until in the majority opinion herein, construed these enactments in a definitive manner so as to meet the *Miller* requirements. Under the *Miller* holding, no one should be subject to prosecution for sale or exposure of obscene materials unless these materials depict or describe patently offensive hardcore sexual conduct.

In *Miller*, the Supreme Court attempted to formulate concrete guidelines to isolate hardcore pornography from expressions protected by the first amendment. The *Miller* guidelines require that the materials and the types of descriptions and representations of sexual conduct to be proscribed be specifically delineated. The required specificity may be accomplished by the language of the legislative enactment itself, or by judicial construction.

A survey of State statutes reveals great variance in their scope. A small number are detailed in the descriptions of proscribed sexual conduct, and more are quite general in their language, but most statutes adopt a middle course which embodies either the *Roth* standard or the

*Roth-Memoirs* test. The validity of a broad, general enactment, such as the Illinois obscenity statute or the Moline obscenity ordinance, presents the court with a difficult determination. This type enactment usually provides no definition of obscenity other than the word obscene itself, or the use of synonyms, such as "prurient interest," "patently offensive," "morbid," "lewd," "indecent," or "lascivious." For an enactment to be sustained, the Constitution mandates that it provide adequate notice to persons engaged in the type of conduct that the enactment seeks to proscribe. Failure to give adequate notice is especially distasteful in the area of free speech. *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 86-87, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (Brennan, J., dissenting).

When at the time of the *Miller* decision, the court remanded more than 60 cases which had jammed its docket, a serious problem of retroactivity arose. Understandably, the due process requirement of fair notice could not be met, since the notice did not exist prior to the commission of the alleged offense. (*Watkins v. United States* (1957), 354 U.S. 178, 208, 1 L. Ed. 2d 1273, 77 S. Ct. 1173.) It appears that in rejecting the *Roth-Memoirs* standards and in establishing the *Miller* guidelines, the court intended that the newly created judicial test would have prospective application only.

The defendants contend that were this court to now construe the obscenity enactments in question in such way as to bring it within the meaning of *Miller,* such construction could not be applied retroactively to them; and that such application of the new *Miller* standards would be comparable to *ex post facto* legislation and would be contrary to due process. I agree. Such retroactive judicial construction has been specifically condemned. In *Bouie v. Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697, two Negroes refused to leave a booth in the restaurant department of a drugstore, although requested to do so by the store manager. They were convicted of

having violated a statute making it a misdemeanor to enter another's land after notice from owner prohibiting such entry. The State court construed the act to cover the conduct of remaining on the premises after being requested to leave. At pages 354 and 355, the court stated: "When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law 'in its primary sense of an opportunity to be heard and to defend [his] substantive right.' *Brinkerhoff-Faris Trust & Sav. Co. v. Hill,* 281 U.S. 673, 678, [74 L. Ed. 1107, 1112, 50 S. Ct. 451]. When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in *Brinkerhoff-Faris, supra,* that 'if the result above stated were attained by an exercise of the State's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious,' and 'The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid *** state statute.' *Id,* at 679-680, [74 L. Ed. at 1112, 1113]."

In *Rabe v. Washington* (1972), 405 U.S. 313, 31 L. Ed. 2d 258, 92 S. Ct. 993, a drive-in theater manager was convicted of exhibiting an obscene picture with knowledge of its contents. The Supreme Court of Washington affirmed on the ground that while the film was probably not obscene if viewed only by consenting adults, it was obscene in the context of its exhibition because 12 to 15 private residences and a major thoroughfare were within viewing range of the theater's screen. On *certiorari,* the United States Supreme Court reversed, and at page 316 stated:

"We hold simply that a State may not criminally punish the exhibition at a drive-in theater of a motion picture where the statute, used to support the conviction, has not given fair notice that the location of the exhibition was a vital element of the offense."

When Ridens, Keckler and Walker sold the paperback books under consideration, neither they, nor their respective prosecutors, could have anticipated with any degree of certainty that the books would be found obscene under a yet unarticulated set of standards. Their respective convictions now stand affirmed under standards set forth in *Miller*, which were announced subsequent to their respective alleged criminal acts. A conviction under such circumstance violates their right to due process of law, because they were not given fair notice that criminal liability was dependent upon the subsequently announced standards. A criminal statute must give fair warning of the conduct that it makes a crime. *United States v. Harriss* (1954), 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812.

Section 11—20(a) of the Illinois obscenity statute lists the elements of the offense of obscenity. It provides that a person commits the offense of obscenity, when with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

"(1) sells, delivers or provides, or offers or agrees to sell deliver or provide any *obscene* material or other representation or embodiment of the *obscene;* or

(2) Presents or directs an *obscene* play, dance or other performance or participates directly in that portion thereof which makes it *obscene;* or

(3) Publishes, exhibits or otherwise makes available anything *obscene;* or

(4) Performs an *obscene* act or otherwise presents an *obscene* exhibition of his body for gain; or

(5) Creates, buys, procures or possesses *obscene* matter or material with intent to disseminate it in violation of this section, or of the penal laws or regulations of

any other jurisdiction; or

(6) Advertises or otherwise promotes the sale of materials represented or held out by him to be *obscene, whether or not it is obscene."* (Emphasis mine.)

This part of the statute in general provides that the elements of the offense of obscenity are knowingly dealing in any manner with obscene materials or conduct.

It seems crystal clear that obscenity should not, and cannot meaningfully, be described in terms of itself, "obscene." Such enactment certainly does not specifically depict or describe the sexual conduct or obscene materials which could constitutionally be proscribed under *Miller.* The types of descriptions and representations of sexual conduct to be proscribed must, under *Miller,* be specifically delineated. *Miller* confines the permissible scope of such regulations to works which depict or describe patently offensive hardcore sexual conduct or obscene materials which must be defined by such enactments as written or construed.

While section 11—20(b) defines obscenity as set forth in the majority opinion, in general it states that a thing is obscene if, considered as a whole, its predominant appeal is to the "prurient interest," that is, a "shameful or morbid interest in nudity, sex or excretion," and it goes beyond customary limits of candor in description or representation of such matters. Thus, section 11—20(b) likewise describes obscenity in terms of itself "obscene" or in terms of other adjectives or adjective clauses, such as "prurient interest," "morbid," or "shameful interest" which are in reality synonyms for obscene. However, neither of the obscenity enactments in question define nudity, obscene, or other adjectives or adjective clauses used therein. In the light of the *Miller* standards, I find the Illinois obscenity statute too general, and that it fails to set out, with specificity, the sexual conduct and materials which would be deemed patently offensive. Thus, in my judgment, the Illinois obscenity statute fails to meet the *Miller* guidelines.

The Moline obscenity ordinance, which is likewise included in the majority opinion, reveals the same type of approach in its attempt to depict or describe sexual conduct or materials which it seeks to proscribe. It recites that a thing is obscene "when to the average person, *** the dominant theme of the material taken as a whole appeals to 'prurient interest' " and prurient interest in sex. It, too, defines obscenity in terms of itself by the use of synonymous adjectives or adjective clauses.

Such general enactments do not inform persons as to what the State commands or forbids. The ancient doctrine of *nulla poena sine lege,* which provides that there can be no punishment without a specific law defining the conduct to be avoided, finds support in *Miller v. California.* People are entitled to know what they may or may not do under threat of fine or imprisonment. The proscribed conduct should be specifically defined for this reason. The enactments in question furnish but meager guidance in this respect.

The majority opinion upholds the constitutionality of the obscenity enactments under consideration by means of judicial construction.

In *Miller,* the court considered the permissible scope of State regulation of works which depict or describe sexual conduct, and made the following statement: "That conduct must be specifically defined by the applicable state law, as written or authoritatively construed" (413 U.S. at 24, 37 L. Ed. 2d at 430, 93 S. Ct. at 2615), and made the following additional remarks in footnote 6: "See, *e.g.,* Oregon Laws 1971, c. 743, Art. 29, secs. 255-262, and Hawaii Penal Code, Tit. 37, secs. 1210-1216, 1972 Hawaii Session Laws, Act 9, c. 12, pt. II, pp. 126-129, as examples of state laws directed at depiction of defined physical conduct, as opposed to expression. Other state formulations could be equally valid in this respect. In giving the Oregon and Hawaii statutes as examples, we do not wish to be understood as approving of them in all

other respects nor as establishing their limits as the extent of state power."

For the purpose of showing the type of specificity which *Miller* approved in a State statute, pertinent portions of the Oregon Revised Statutes are set forth as follows:

"OBSCENITY AND RELATED OFFENSES

167.060 Definitions for ORS 167.060 to 167.095. As used in ORS 167.060 to 167.095, unless the context requires otherwise:

(1) 'Advertising purposes' means purposes of propagandizing in connection with the commercial sale of a product or type of product, the commercial offering of a service, or the commercial exhibition of an entertainment.

(2) 'Displays publicly' means the exposing, placing, posting, exhibiting, or in any fashion displaying in any location, whether public or private, an item in such a manner that it may be readily seen and its content or character distinguished by normal unaided vision viewing it from a public thoroughfare, depot or vehicle.

(3) 'Furnishes' means to sell, give, rent, loan or otherwise provide.

(4) 'Minor' means an unmarried person under 18 years of age.

(5) 'Nudity' means uncovered, or less than opaquely covered, post-pubertal human genitals, pubic areas, the post-pubertal human female breast below a point immediately above the top of the areola, or the covered human male genitals in a discernibly turgid state. For purposes of this definition, a female breast is considered uncovered if the nipple only or the nipple and the areola only are covered.

(6) 'Obscene performance' means a play, motion picture, dance, show or other presentation, whether pictured, animated or live, performed before an audience and which in whole or in part depicts or reveals nudity, sexual conduct, sexual excitement or sado-masochistic abuse, or which includes obscenities or explicit verbal descriptions or narrative accounts of sexual conduct.

(7) 'Obscenities' means those slang words currently generally rejected for regular use in mixed society, that are used to refer to genitals, female breasts, sexual

conduct or excretory functions or products, either that have no other meaning or that in context are clearly used for their bodily, sexual or excretory meaning.

\* \* \*

(9) 'Sado-masochistic abuse' means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

(10) 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

(11) 'Sexual excitement' means the condition of human male or female genitals or the breats of the female when in a state of sexual stimulation, or the sensual experiences of humans engaging in or witnessing sexual conduct or nudity. [Oregon Laws and Resolutions 1971, ch. 743, sec. 255.]

167.065 Furnishing obscene materials to minors. (1) A person commits the crime of furnishing obscene materials to minors if, knowing or having good reason to know the character of the material furnished, he furnishes to a minor:

(a) Any picture, photograph, drawing, sculpture, motion picture, film or other visual representation or image of a person or portion of the human body that depicts nudity, sado-masochistic abuse, sexual conduct or sexual excitement; or

(b) Any book, magazine, paperback, pamphlet or other written or printed matter, however reproduced, or any sound recording which contains matter of the nature described in paragraph (a) of this subsection, or obscenities, or explicit verbal descriptions or narrative accounts of sexual conduct, sexual excitement or sado-masochistic abuse.

(2) Furnishing obscene materials to minors is a Class A misdemeanor. Notwithstanding ORS 161.635 and 161.655, a person convicted under this section may be sentenced to pay a fine, fixed by the court, not exceeding $10,000." Ore. Rev. Stat. secs. 167.060, 167.065 (1974).

During the past 15 years the obscenity problem has taken much of the judiciary's time and effort.

Mr. Chief Justice Burger, in writing for the majority of the court, pertinently began the *Miller* opinion with the following words: "This is one of a group of 'obscenity-pornography' cases being reviewed by the court in a reexamination of standards enunciated in earlier cases involving what Mr. Justice Harlan called 'the intractable obscenity problem.' *Interstate Circuit, Inc. v. Dallas,* 390. U.S. 676, 704 [20 L. Ed. 2d 225, 88 S. Ct. 1298]."

The overall circumstances attendant upon the obscenity problem are well described by the title of Walter Gellhorn's John A. Sibley Lecture, *Dirty Books, Disgusting Pictures, and Dreadful Laws,*" 8 Ga. L. Rev. 291 (1974). A classical statement on this subject was made by Mr. Justice Stewart in his concurring opinion in *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 12 L. Ed. 2d 793, 84 S. Ct. 1676, where he stated:

"I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since *Roth* and *Alberts,* that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that."

Justices Douglas and Black have been criticized as absolutists, being of the view that expression which is unbrigaded with action may not be subjected go governmental regulation. In his dissent in *Roth v. United States* (354 U.S. 476), Justice Douglas's position was stated in the following sentence at page 514: "Freedom of expression can be suppressed if, and to the extent that, it is so closely

brigaded with illegal action as to be an inseparable part of it." Justices Douglas and Black would give the broad sweep of the first amendment full support. The obscenity problem involves censorship—the struggle between attempted social control of materials and conduct alleged to be obscene and the first-amendment concept of freedom of expression. In general, courts have not had signal success in dealing with social problems, *e.g.,* integration, school segregation, bussing and obscenity.

However, in defense of the judiciary, it must be noted that its venture into solving social problems has come about because of the failure of the legislative branch of government to act. The fourteenth amendment was adopted in 1868, and although Congress was given express power to implement the amendment, it took no such action. The social problem of school segregation reached the Supreme Court in 1954, in *Brown v. Board of Education* (1954), 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686, and in *Bolling v. Sharpe* (1954), 347 U.S. 497, 98 L. Ed. 884, 74 S. Ct. 693.

The legislature is better equipped through hearings and other legislative procedures to determine public desires and needs in this sensitive area and to define prohibited conduct with such specificity so as to proscribe the printing, publishing, the sale or offer of sale, or the display or distribution of materials concerning sexual conduct or activities which can be constitutionally prohibited.

It can define such terms as "prurient interest," "contemporary community standards," "patently offensive," "nudity," "serious literary, artistic, political, or scientific value" and other terms which presently bring serious construction problems before the courts and which tend to force the courts to legislate, even though interstitially.

While I abhor the traffic in hardcore pornography, I do firmly believe that there should be no punishment without a specific law defining the conduct to be

proscribed; and that a criminal statute must give fair warning of the conduct that makes it a crime.