**UNITED STATES of America, Plaintiff,**

v.

**MISCELLANEOUS PORNOGRAPHIC MAGAZINES, Defendant.**

**No. 74 C 1680.**

United States District Court, N. D. Illinois, E. D.

July 22, 1975.

James R. Thompson, Jr., U. S. Atty., Chicago, Ill., for plaintiff.

Ronald Goldberg, Chicago, Ill., for defendant.

## DECISION

McMILLEN, District Judge.

The government has brought this case in order to destroy three magazines and a deck of cards pursuant to 19 U.S.C. § 1305. The items are allegedly obscene and were seized when the claimants declared them to be "porno books" at the port of entry, O'Hare International Airport. Most of the words contained in the document are admittedly unintelligible to the claimants, but they assert that the pictures are of such artistic or scientific value that renders them exempt from the obscenity definition of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

The parties submitted their case to a jury of six persons which was unable to decide whether any of the items, taken

as a whole, appealed to the prurient interest when tested by "the average person, applying contemporary community standards". (*Miller*, 413 U.S. at p. 21, 93 S.Ct. at p. 2615). We attach hereto some of the substantive instructions which were given at the trial, since they may be of use in future trials.

The parties have now waived a jury and have submitted their case to the court on the same evidence adduced at the jury trial, agreeing that this court can decide it as an "average person" despite residence outside the claimants' domicile. We therefore find ourself in the rather anomalous position of deciding an issue which six average persons residing in Chicago could not agree on, a procedure which nevertheless was tacitly approved in *Paris Adult Theatre I et al. v. Slaton*, 413 U.S. 49, 52, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Although we are not limited to Chicago standards under *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974), the evidence necessarily imposes this limitation.

The first issue to be decided on the new trial is whether the government proved its case by introducing the seized items and then resting. The claimants made a motion for a directed verdict at that stage of the jury trial, so we assume that a similar motion would have been made in the bench trial pursuant to F.R.C.P. 41(b). This raises the question of whether the materials are not obscene as a matter of law.

The guidelines are stated in *Miller* at 413 U.S. p. 24, 93 S.Ct. p. 2615 as follows:

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* 408 U.S. 229 at 230, 92 S.Ct. 2245, 33 L.Ed.2d 312, quoting *Roth v. United States, supra,* 354 U.S. 476, at 489, 77 S.Ct. 1304, 1 L.Ed.2d 1498; (b) whether the work

depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . .

■ We have reviewed the government's evidence in this light, consisting of Exhibits 1, 2, 3 and 4. The materials themselves generally fit the description of those involved in *Miller* (413 U.S. at p. 18, 93 S.Ct. at p. 2611):

. . . While the brochures contain some descriptive printed material, primarily they consist of pictures and drawings very explicitly depicting men and women in groups of two or more engaging in a variety of sexual activities, with genitals often prominently displayed.

The ordinances of the City of Chicago, Ch. 192-4 through 192-10.2, could properly be considered evidence of "contemporary community standards". However, they merely incorporate the general proscriptions of *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and leave to the average person, applying contemporary community standards, the question of whether the dominant theme of the material, taken as a whole, "appeals to prurient interests" (Sec. 192-9). *Roth*, at 354 U.S. 489, 77 S.Ct. 1304.

■ Although *Roth* has now been modified by *Miller* for the purpose of determining obscene materials, its definition of obscenity was specifically adopted in *Miller*. Since this definition has also been adopted by the City Council of Chicago, we find and conclude that the plaintiff made out its case by introducing the four exhibits. In our opinion, the average person in Chicago would find that the dominant theme of the seized material, taken as a whole, does appeal to the prurient interest.

■ It then becomes incumbent upon the claimants to show by the weight of the evidence that the documents do not depict, in a patently offensive way, sex-

ual conduct specifically defined by applicable state law or do not lack serious literary, artistic, political or scientific value (*Miller,* 413 U.S. at 24, 93 S.Ct. 2607). Accordingly, claimants introduced their Exhibits 1, 2 and 3 which are on sale generally in the City of Chicago and were purchased in the vicinity of the Federal courthouse. We assume that the purchases and sales were legal under the ordinance and reflect a prevailing community standard of lack of obscenity. Thus these exhibits were also admitted into evidence for their photographs only, since the printed portions of the seized materials were not in issue.

■ The second *Miller* criterion ((b), *supra,* p. 354) is difficult to apply, semantically. Illinois law does not "define" the sexual conduct depicted in the magazines or cards. Illinois law does not define any sexual conduct, although it makes certain types of sexual conduct a criminal offense. An Illinois statute also makes the distribution of obscene material a misdemeanor and defines "obscene" as follows (1973 *Ill.Rev.Stat.,* Ch. 38, § 11–20(b)):

> (b) Obscene Defined.
>
> A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .

Although the foregoing definition antedates *Miller,* it has been subsequently upheld as complying with that decision. *People v. Ridens,* 59 Ill.2d 362, 321 N.E.2d 264 (1974). The material involved in *Ridens* is described in an earlier opinion at 51 Ill.2d 410, 417, 282 N.E.2d 691 (1972), and the sexual conduct therein is less explicit and less offensive than the material in the case at bar. Therefore the material in the case at bar is obscene under Illinois law.

Claimants' principal reliance is placed on the third criterion of *Miller,* ((c), *supra,* p. 354). In sum, a psychiatrist testified that the seized materials were similar to those used for scientific research and therapy, and a professor of photography testified that they had some artistic value. Both witnesses testified as experts, not as average persons, and both admitted to some degree of bias. We nevertheless accept their testimony at face value.

The psychiatrist testified to a specialized use of the materials, not to their scientific value "taken as a whole". The photographer defined art as a creative and innovative attempt to stimulate and admitted that his definition was "more or less personal". He did not evaluate the exhibits "taken as a whole".

■ The Supreme Court in *Miller* has abandoned the requirement that obscene materials be "utterly without redeeming social value" (413 U.S. 22, 37, 93 S.Ct. 2607). The same court, however, requires the material to be of "serious" artistic or scientific value. We are not satisfied that these materials, taken as a whole, are of serious artistic or scientific value. According to the evidence, they can be used for such purposes, but they were quite obviously not produced for those purposes. Nor is there any evidence that they or the other relevant materials which were admitted into evidence are sold for such purposes or that the claimants or anyone else intended so to use them. When the materials are considered as a whole, their artistic and scientific values are incidental and minimal, although there is some artistic merit to some of the photographs if this were not outweighed by the nature of the subject matter, and we need not question the sincerity of the expert witnesses to find that the materials are obscene.

■ The government need not prove that the seized material is obscene beyond a reasonable doubt, since this case, unlike many of those cited by the par-

ties, is not a criminal prosecution. The government merely needs to establish by the weight of the evidence that the average person in Chicago, applying contemporary community standards, would find that the seized materials appeal to the prurient interest, and that they depict sexual conduct in a patently offensive way. The government has accomplished this by introducing the materials as evidence, and the claimants have failed to convince this court that the *Miller* exceptions have been satisfied.

It is therefore ordered, adjudged and decreed that the subject materials are forfeited and the claimants' counterclaim is denied.

In your deliberations on the issue of obscenity, you must apply three tests. They are as follows:

Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interests;

Whether the work depicts or describes sexual conduct in a clearly offensive way, and

Whether the work taken as a whole lacks serious literary, artistic, political, or scientific value.

If the material involved in this case satisfies all three tests, then it is obscene, but if it fails to satisfy any one or more of the tests, it is not obscene.

As to the first test, the requirement to be applied in determining whether the material in evidence is obscene is whether you believe that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to prurient interests.

Prurient interest has been defined as that which appeals to a shameful or impure interest in sex and nudity.

Contemporary community standards mean the standards generally held by the average person in the local community concerning sex and matters pertaining to sex. The phrase means, as it has been aptly stated, the average conscience of the time and place.

As to the second test, the requirement to be applied in determining whether the material in evidence is obscene is whether the material is clearly offensive in that it goes substantially beyond what is reasonably accepted according to the contemporary standards of the community as a whole. In applying this test you must consider each book as a whole and not part by part. You must measure the material by contemporary or current local community standards and determine whether the material so exceeds the customary limits of candor in the descriptions and representations of sex and nudity which are reasonably acceptable in the local community that they are clearly offensive.

A work may be found to be clearly offensive if the materials in evidence substantially exceed the limits of candor in the descriptions and representations of sex which are acceptable to the local community.

The materials in evidence here cannot be found to be obscene unless the weight of the evidence shows that these materials substantially exceed customary limits of candor in the local community in the description and representation of sex and nudity.

The word 'substantially' has been defined as greatly, considerably, or largely.

Finally, the third test you must apply is whether the work taken as a whole lacks serious literary, artistic, political, or scientific value.

The materials in evidence here cannot be found to be obscene unless the weight of the evidence shows that the materials do not deal with common and marital social and sexual problems, although the materials may not be the type which you would read or recommend.

The word 'serious' has been defined as 'applying sober thought.'