THE CITY OF BELLEVILLE, Plaintiff-Appellee, *v.* CATHLEEN A. MORGAN *et al.*, Defendants-Appellants.

Fifth District   Nos. 76-268, 76-269, 76-242 cons.

Opinion filed May 9, 1978.

Neil H. Adelman, of Devoe, Shadur & Krupp, of Chicago, Harold G. Baker, Jr., and Steven Katzman, of Paul Storment, Jr., Ltd., both of Belleville, for appellants.

Patrick M. Flynn, of Belleville, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants, Cathleen A. Morgan and Larry R. Kimmel, appeal from convictions for violations of the obscenity ordinance of the city of Belleville. The various charges were prosecuted in three separate cases and heard before the court, sitting without a jury. The appeals from the three have been consolidated in this court for the purpose of review. The cases involved either the sale or the offering for sale of nine different magazines at a certain magazine shop.

Defendant Morgan was found guilty in two cases on the basis of respective sales of the February 1976 issue of *Playboy* magazine and a magazine entitled *Love Games*. In the third case, she was found guilty of two sales of the February 1976 issue of *Viva* magazine, one sale each of the February and March 1976 issues of *Playgirl* magazine, the December 1974 issue of *Genesis* magazine and the magazine *Loving Couples* and of displaying for the purpose of sale the April 1976 issue of *Dapper* magazine. Defendant Kimmel was found guilty in the same case for the

sale of the March 1975 issue of *Gallery* magazine. The court fined defendant $50 and court costs on each violation.

Defendants present three issues as to all the cases. In essence, they are: (1) was the refusal of the court to allow defendants to take discovery by interrogatories or depositions concerning what parts of the magazines were asserted to be obscene under the ordinance an abuse of discretion; (2) is the ordinance constitutional in light of its inclusion of nudity as an element of obscenity; and (3) are the magazines protected by the First Amendment or regulable as obscenity by the instant ordinance. In addition, defendants present the following issue as to the third case, involving numerous magazines: is the ordinance vague and overbroad, hence, unconstitutional, because it fails to advise defendants of the conduct prohibited by the ordinance.

Defendant Morgan served written interrogatories upon the City in the *Playboy* and *Love Games* cases. The interrogatories sought an enunciation as to which items in the magazines were alleged by the City to be violations of the various enumerations of offensive conduct found in the ordinance. Similarly, a motion for leave to take depositions was filed by defendants in the third case, wherein the numerous violations set out above were consolidated for trial. Both motions were denied.

Defendants contend that the court abused its discretion in denying them the requested pretrial discovery.

■■ In *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 292 N.E.2d 382, our supreme court, after noting the somewhat amorphous nature of prosecutions for violations of municipal ordinances, being considered civil in form although quasi-criminal in character, held that whether the discovery provisions of the Civil Practice Act might be invoked by a defendant in an ordinance prosecution is within the discretion of the trial court. In response to this holding, Supreme Court Rule 201 (Ill. Rev. Stat. 1975, ch. 110A, par. 201) was amended in 1974 (effective September 1, 1974) by the addition of paragraph (h) which provides:

> "Discovery in Ordinance Violation Cases. In suits for violation of municipal ordinances where the penalty is a fine only no deposition shall be taken or other discovery procedure used prior to trial except by leave of court."

■■ This court is left to conjecture as to whether the obscenity violations were punishable by fine only since the defendants never made a record of what the possible penalties were. In view of the accepted rule that any doubt arising from the incompleteness of the record will be resolved against the appellant (*Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 331 N.E.2d 380; *Reed v. Hoffman*, 48 Ill. App. 3d 815, 363 N.E.2d 140), we must presume that the authorized penalty is fine only and that Rule 201(h) applies.

The appellate court will not find error or set aside a ruling of the trial judge based on a discretionary matter unless there has been a clear abuse of discretion. (*Sherman v. City of Springfield*, 111 Ill. App. 2d 391, 250 N.E.2d 537.) After due consideration, we find that the court's denials of the motions for discovery were not abuses of discretion.

■■ The city's ordinance is explicit as to what is considered unlawful, namely, "patently offensive representations or descriptions of nude persons, ultimate sexual acts, normal or perverted sexual conduct, whether actual or simulated, or patently offensive representations or descriptions of masturbation, excretory functions, or lewd exhibition of the genitals." As a result of this specific enumeration, defendants were adequately on notice as to what portions of the magazines required their defense. In addition, it would be illogical to require the prosecuting authority to be more specific in discovery as to the objectionable portions of the alleged obscene material than is required at trial. The United States Supreme Court has consistently regarded the materials as sufficient in themselves for determination of the questions of obscenity and rejected the need for any other ancillary evidence of obscenity once the allegedly obscene material is placed into evidence. *Ginzburg v. United States* (1966), 383 U.S. 463, 465, 16 L. Ed. 2d 31, 86 S. Ct. 942; *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56, 37 L. Ed. 2d 446, 93 S. Ct. 2628; *Kaplan v. California*, 413 U.S. 115, 121, 37 L. Ed. 2d 492, 93 S. Ct. 2680. (The city, in these cases, did confine its case against the magazines to introduction of them as exhibits.)

■■ In *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, the United States Supreme Court reaffirmed numerous decisions declaring that "obscene material is unprotected by the First Amendment" (413 U.S. 15, 23, 37 L. Ed. 2d 419, 430, 93 S. Ct. 2607, 2614 (and consequently not protected in the States through the Fourteenth Amendment)), and set forth the test for determining whether alleged obscene materials are regulable as obscenity or protected by the First Amendment:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin*, [408 U.S. 229, 230, 33 L. Ed. 2d 312, 315, 92 S. Ct. 2245, 2246], quoting *Roth v. United States*, [354 U.S. 476, 489, 1 L. Ed. 2d 1498, 1509, 77 S. Ct. 1304, 1311]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.

The court also gave two examples of what a statute could define for regulation under part (b) of the announced standard. They were:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. 15, 25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.

The obscenity ordinance of the city of Belleville, Ordinance 61.36, appears to have been designed to incorporate the test and suggestions of the *Miller* court. The ordinance provides in pertinent part:

"(a) It shall be unlawful for any person to sell, deliver, offer for sale, distribute, publish, print, exhibit or possess with intent to distribute, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, any obscene writing, picture * * * or other representation or embodiment of the obscene, * * * or to advertise or otherwise promote obscene material.

(b) *A thing shall be deemed to be obscene if the average person would find that the work taken as a whole appeals to a prurient interest, and the work depicts or describes patently offensive representations or descriptions of nude persons, ultimate sexual acts, normal or perverted sexual conduct, whether actual or simulated, or patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the human genitals. The work, taken as a whole, must lack serious literary, artistic, political, or scientific value."* (Emphasis added.)

In obscenity cases, a reviewing court must make an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected. (*People v. Ridens*, 59 Ill. 2d 362, 321 N.E.2d 264, *cert. denied*, 421 U.S. 993, 44 L. Ed. 2d 483, 95 S. Ct. 2000, and cases cited therein; *People v. Ward*, 63 Ill. 2d 437, 349 N.E.2d 47, *aff'd*, 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085.) Before reviewing the publications at issue in this case, we shall address the contentions made concerning the constitutionality of this ordinance on its face.

Defendants argue that the ordinance is constitutionally overbroad because it includes depictions or descriptions of "nude persons" within its definition of obscenity. They argue that the "vice of this overbreadth" is particularly compelling since the magazines either contain depictions of nudity or possible simulated sexual acts only and not "hard core" sexual conduct.

We agree that the United States Supreme Court held in *Jenkins v. Georgia* (1974), 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750, that nudity

alone is not enough to make material legally obscene under the *Miller* standards; however, we cannot agree with defendants that this ordinance is fatally overbroad, especially as applied to the instant materials. "In order that a statute be held overbroad the overbreadth 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (*Broaderick v. Oklahoma*, 413 U.S. 601, 615, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2918.)" (*People v. Ridens*, 59 Ill. 2d 362, 372, 321 N.E.2d 264; *Ward v. Illinois*, 431 U.S. 767, 776, 52 L. Ed. 2d 738, 747, 97 S. Ct. 2085, 2091.) There is no such substantial overbreadth here.

■■ The ordinance lists the depiction or description of "patently offensive representations or descriptions of nude persons" as the first item of a list which we have already noted is substantially identical to the conduct the *Miller* court held was regulable as obscenity. It is plain enough from the ordinance's adoption of the wording of *Miller* that the city recognized the limitations on the kinds of representations or depictions of sexual conduct which may be prohibited by obscenity laws. Under these circumstances, we would be unwarranted in finding the ordinance to be overbroad because of the above inclusion. The above language can be construed as limited to later enumerations. Such a construction, in our opinion, does not affect the findings with respect to the instant publications.

Defendants also contend that the ordinance is unconstitutional because it neglects to inform the trier of fact that in assessing whether an average person would find that the work, taken as a whole, appeals to the prurient interest he is to assume that the average person is "applying contemporary community standards," and because terms such as "prurient" and "excretory functions" are definitionally vague so as to fail to advise defendants of what acts are prohibited. We find no merit in either contention.

■■ Defendants argue that the omission of the community standards phrase negates the ordinance because it allows any person, judge or juror who feels that he is an average person to determine what is or is not obscene. We have no hesitation in finding that defendants were not harmed by this omission since their cases were tried before the court rather than before a jury. We presume that the judge was cognizant of the need for consideration of community standards and that he did consider them.

Although this ordinance could be improved by insertion of the omitted phrase, it is not invalid as written. "[T]he primary concern with requiring a jury to apply the standard of 'the average person, applying contemporary community standards' is to be certain that, so far as material is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive

person—or indeed a totally insensitive one." (*Miller v. California*, 413 U.S. 15, 33, 37 L. Ed. 2d 419, 436, 93 S. Ct. 2607, 2620, and cases cited therein.) This concern is achieved as well by the direction to determine if an "average person" would find the work taken as a whole appeals to the prurient interest as by the direction to determine if "an average person, applying contemporary community standards," would so find. See generally *Hamling v. United States*, 418 U.S. 87, 104-05, 41 L. Ed. 2d 590, 613, 94 S. Ct. 2887, 2901.

Defendants' argument as to the vagueness of the ordinance is also unpersuasive. The ordinary ambiguities of the meaning of words of art is insufficient to support a finding of unconstitutional vagueness. As stated in *Grayned v. City of Rockford*, 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300, "Condemned to the use of words, we can never expect mathematical certainty from our language."

The last task at hand is, after reviewing the publications, to make an independent judgment as to whether any or all of these materials are constitutionally protected. As noted by our supreme court in *People v. Ridens*, 59 Ill. 2d 362, 374, 321 N.E.2d 264, 270, quoting from *Jenkins v. Georgia*, 418 U.S. 153, 163, 41 L. Ed. 2d 642, 652, 94 S. Ct. 2750, 2756, (Brennan, J., concurring opinion): " 'After the Court's decision today, there can be no doubt that Miller requires appellate courts * * * to review independently the constitutional fact of obscenity. Moreover, the Court's task is not limited to reviewing a jury finding under part (c) of the *Miller* test that "the work, taken as a whole, lack[ed] serious literary, artistic, political or scientific value." *Miller* also requires independent review of a jury's determination under part (b) of the *Miller* test that "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." ' " After reviewing the publications, we affirm the holdings of the trial court. The materials are in fact obscene.

There is no doubt whatsoever that the average person, applying contemporary community standards, would find that all of the magazines, taken as a whole, appeal to the prurient interest. Their dominant theme is a morbid interest in nudity and sex. We also find that all the magazines contain patently offensive depictions and descriptions of sexual conduct set out in the ordinance.

Due to the differing formats, modes of presentation and levels of quality of these magazines, the determination of the existence or lack of serious literary, artistic, political or scientific value in some of the magazines, each considered as a whole, proved to be the most rigorous determination. We have concluded, however, that the constitutional requirement of the "lack of serious value" is satisfied with respect to all the magazines and will explain our reasoning where appropriate.

Two of the magazines, *Love Games* and *Loving Couples,* contain virtually no text. They are composed almost entirely of color photographs of nude and nearly nude men and women in provocative embraces. The photographs of *Love Games* suggest imminent acts of sexual intercourse, cunnilingus, fellatio and lesbian lovemaking. Some of the photographs depict simulated acts of intercourse and cunnilingus.

*Loving Couples* consists of six full color photographic "essays," the primary theme of the photographic essays being the depiction of various sexual encounters. All but two of the essays utilize one male and one female model in depictions of simulated or imminent acts of intercourse, oral sex and masturbation of the female. In the other two, an additional male model is put into action. The male and female genitals are prominently displayed in many of the photographs.

■■ These depictions are all enumerated as conduct regulated by the obscenity ordinance. The Illinois courts have also held that publications which mainly consist of photographs of naked persons that primarily focus on the exposed genitals or which depict actual or imminent sex acts such as intercourse, fellatio, cunnilingus and masturbation are obscene and not protected by the Constitution. (*People v. Gould,* 60 Ill. 2d 159, 324 N.E.2d 412; *People v. Glass,* 41 Ill. App. 3d 43, 353 N.E.2d 214; *People v. Penney,* 7 Ill. App. 3d 191, 287 N.E.2d 220.) Such depictions are "patently offensive," and this should be kept in mind as we discuss the other magazines.

Defendant Morgan argues that *Love Games* does not lack serious artistic value. She stresses the aesthetics achieved in the photographs as a result of the sophisticated techniques of the individual photographers. It is our belief that the content of the photographs, rather than the quality of their composition, is controlling. This is especially true considering the obvious purpose of the magazine and its intended audience—the general public. The most offensive, vivid portrayal of sexual conduct could not be rendered nonobscene because the photograph of its exhibits the best techniques of photography.

We also have no hesitation in finding that the April 1976 and March 1975 issues respectively of *Dapper* and *Gallery* magazines contain patently offensive depictions and are lacking in serious value. These two magazines contain substantially more text that the two previously discussed magazines.

The *Dapper* issue consists primarily of color photographs of naked and nearly naked women in a variety of postures. The models generally appear in reclining or bent-over positions with their legs spread open in such a way that their genitals are not only clearly revealed but are made the focal point of the photograph. In many of the photographs long stockings and garter belts are employed to frame the genital area and

direct attention to it. Articles, such as "The Erotic Thrills of Kinky Sex," explicitly live up to their titles. Two short stories, "The Fish Hook" and "The Champ," have very little literary value and no purpose except to serve as vehicles for detailed descriptions of forcible rape, sexual intercourse, and fellatio. The cases mentioned above support our finding that this magazine is obscene. The *Miller* court clearly stated that lewd exhibitions of the genitals could constitutionally be regulated by the states. (413 U.S. 15, 25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.) This ordinance did so and *Dapper* violated that portion of the ordinance as well as others.

Similarly, the *Gallery* issue offends the ordinance and is properly held obscene. It contains pictures of nude men and women in sequences suggesting imminent intercourse and pictures of women postured so as to make their genitals the focus of the photographs. Moreover, various articles therein contain patently offensive descriptions of sexual conduct: For example, "Gal Porn Filmer, Roberta Findlay" concentrates on a description of Ms. Findlay's latest film "Angel No. 9," especially a fellatio scene which the author categorizes as "the most abusive oral scene ever committed to the celluloid." The article, "The Swap Palace," purports to be the recounting of the sexual experiences of four married couples, living together in cooperative housing, with partners other than their own mates. The article is in interview form and contains explicit descriptions of anal and normal intercourse, fellatio, cunnilingus and group sex. The amount of innocuous text in this magazine is clearly too slight to lend the issue serious literary, artistic, political or scientific value when the issue is considered as a whole.

The remaining five magazine issues, February 1976 *Playboy*, February 1976 *Viva*, February and March 1976 *Playgirl*, and December 1974 *Genesis*, have similarities in composition which has led us to apply the same reasoning in determining that they were properly held obscene. It is therefore appropriate to discuss them in a unified manner.

The only question which can be viewed as seriously in doubt is whether each magazine lacks serious literary, artistic, political or scientific value. It is readily apparent that the real reason for the existence of these magazines is the dissemination of the obscene and pornographic photographs and articles contained within them. It is also clear after our examination of the exhibits that each magazine contains patently offensive representations or descriptions of conduct properly regulated as obscenity by this ordinance. Examples are described below.

The *Playboy* issue, in addition to its photographs of nude women, contains graphic descriptions of deviate sex acts, involving the mouth of one and the sex organ or anus of another, and of female masturbation in "The Playboy Advisor" and "The Playboy Forum," respectively. Graphic

descriptions of sexual intercourse are also contained in the article "Understanding Your Erotic Dreams."

Both issues of *Playgirl* contain numerous photographs showing frontal views of totally nude male models in which the genitals are the focus of the photograph. We find these photographs to be lewd exhibitions of the genitals. The emphasis on the genitals is achieved by several techniques such as placing the model in light which puts his body in shadow except for his genitals, posing the model while he is reclined with his legs separated or by utilizing a camera angle in which the camera is at the level of the genitals or lower.

The *Viva* issue contains a series of photographs, entitled "Jet Sex," of a nude man and woman embracing and touching each other in a manner suggesting normal and deviant sexual acts. The female model is shown grasping the male's penis and the mouths of both models are depicted in close proximity to the other's genitals. Another series of photographs, entitled "Loving Pool," depicts the seduction of a woman on a raft, floating in a pool. Intercourse, perhaps simulated, is represented in photographs showing the nude male model lying on top of the nude female model. In an article, "Sexual Fantasies," the format of a psychologist's interpretation of dreams is used for presenting descriptions of sexual acts including fellatio and explicit female masturbation.

In the *Genesis* issue, there is a clearly pornographic article, entitled "A Tender Obscenity," authored by a husband and wife which purports to tell how the authors, after 20 years of sexual boredom, saved their marriage by fornicating in the back yard and other unconventional places. The story amounts to little else but a series of explicitly described sexual acts both normal and abnormal. There are also numerous photographic displays of nude women many of whom are postured so as to prominently reveal their genitals.

The defendants argue that these magazines cannot be held obscene because the nonobscene articles and monthly features contained in each of these magazines preclude our finding that each magazine, taken as a whole, lacks serious literary, artistic political or scientific value.

We agree with defendants that interspersed among the above noted photographs and materials in these magazines that are patently offensive and pornographic are articles that are inoffensive, wholly proper and even desirable commentary on current events, politics, fashions, sports and so forth. However, we find that the juxtaposition of these obscene materials with desirable articles in the same magazine does not thwart a finding of obscenity. *Miller* requires that before material may be found obscene, the *work, taken as a whole,* must lack serious literary, artistic, political or scientific value. This formulation presupposes that the material may justifiably be viewed as a coherent whole or entity. This standard cannot

be twisted by the pornographers to save material which is not a "whole" other than in a purely physical sense and we shall not do so.

These magazines are actually a series of contents rather than a unified whole. The obscene articles and photographs are totally disassociated in both text and context from the proper portions of the magazines. The obscene and proper articles are complete unto themselves and are in no way related in overall theme or in any other manner. The format by which these separate elements are mixed appears to be designed in an attempt for the proper materials to support the presentation of the obscene. Under these circumstances, we believe that we must find that these magazines lack serious value despite the insertion of nonobscene text since the offensive materials themselves are without the requisite value when viewed as a whole.

The Supreme Court stated in *Miller*: "At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political or scientific value to merit First Amendment protection. [Citations.]" (413 U.S. 15, 26, 37 L. Ed. 2d 419, 431-32, 93 S. Ct. 2607, 2616.) Many years before in *Roth v. United States* (1957), 354 U.S. 476, 488, 1 L. Ed. 2d 1498, 1508, 77 S. Ct. 1304, 1310, the court noted in a similar vein that, "The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press."

■■ The import of these quotations is clear. Obscenity is only protected when it is part of a unified whole which has overall serious value of a literary, artistic, political or scientific nature. When, as here, the obscenity is valueless within its own context and not part of a larger product other than in a purely physical sense, it must be deemed to lack serious value and, hence, to be regulable as obscenity.

The foregoing opinion expresses the views and judgment of the author of this opinion. The other members of the panel are in agreement with regard to all publications considered except *Playboy*. The panel members other than the author are of the opinion and judgment that the *Playboy* issue is not obscene within the parameters set forth in *People v. Ridens*. Accordingly, the judgments of the circuit court of St. Clair County finding defendants in violation of the Belleville obscenity ordinance with respect to *Playboy* are reversed; with respect to all other publications, the judgments are affirmed.

Affirmed in part; reversed in part.

EBERSPACHER, P. J., and G. MORAN, J., concur.