UNITED STATES of America,
Plaintiff-Appellant,

v.

VARIOUS ARTICLES OF MERCHAN-
DISE, SEIZURE NO. 170,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

VARIOUS ARTICLES OF MERCHAN-
DISE, SEIZURE NO. 182,
Defendant-Appellee.

Nos. 83–1911, 83–1943.

United States Court of Appeals,
Seventh Circuit.

Submitted May 3, 1984.*

Decided Dec. 10, 1984.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). As petitioner has filed a statement waiving oral argument, the appeal has been submitted on the briefs and record.

Patrice Scully, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff.

Before CUMMINGS, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

The government appeals an order of the district court holding that four magazines are not obscene and therefore not subject to seizure from the international mails. The seizure took place in Chicago. The district court held that these works were not patently offensive to the average person in the relevant community because of the wide availability of similar works throughout the City of Chicago. We vacate the district court's order and remand the case for further consideration.

## I.

This case arises out of two separate *in rem* actions brought by the United States against allegedly obscene materials which were seized in Chicago from the international mails by the United States Customs Service, pursuant to section 305 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1305. The statute makes it unlawful to import obscene articles into the United States and provides for their seizure and forfeiture.

The district court held several of the works obscene and ordered their destruction; the court also held that the remainder of the works were not obscene, on the ground that similar works were widely available throughout the City of Chicago where the seizure took place. The court also found that one such work, "Dream Boy 2," was virtually equivalent to the "Playgirl Annual" and was therefore not obscene. The appellant filed a timely notice of appeal challenging the finding that four of the works, "Sex Bizarre 31," "Sensation 20," "Bottle Game" and "Dream Boy 2," are not obscene.

The government asserts, and inspection confirms, that "Sex Bizarre 31" contains photographs of fellatio, cunnilingus, genital intercourse, mutual masturbation and pictures of men and women urinating alone or on each other. Some of the photographs are accompanied by text of a similar genre. "Sensation 20" and "Bottle Game," contain no text, but both contain exclusively pictures—including close-ups—of various forms of homosexual and heterosexual sex, including group sex. Each magazine contains a picture of a male ejaculating on a woman's breast or face. Finally, "Dream Boy 2" features photographs of adolescent males in positions of masturbation. One series of close-up photographs depicts one of the young men masturbating to ejaculation.

While the addressees of the various works were served with notice of seizure, none appeared before the district court and none have filed briefs with this court.

## II.

Obscene matter is not protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *United States v. Langford*, 688 F.2d 1088, 1091 (7th Cir. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2433, 77 L.Ed.2d 1319 (1983). To determine whether a particular item is obscene, we apply a three-part test: first, the work, taken as a whole, must appeal to prurient interest; second, the work must portray sexual conduct in a patently offensive way; and third, the work, taken as a whole, must lack serious literary, artistic, political or scientific value. *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). The only issue in this appeal is whether the works involved portray sexual conduct in a patently offensive way; it is undisputed that the works meet the other two parts of the *Miller* test.

The issue of patent offensiveness is a difficult one for the district court to assess and for us to review. The Second Circuit recently treated the issue of patent offensiveness as a two-part inquiry. *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102*, 709 F.2d 132

(2nd Cir.1983). The reviewing court first conducted a *de novo* review of the district court's determination whether the materials depict "hard core" sexual conduct which could constitutionally be labeled "obscene." *Id.* at 135. There is, of course, no question that the material before us portrays hard core sexual conduct. The Second Circuit then examined the trier of fact's finding whether the material was patently offensive to the average person in the community. *Id.* In the circumstances of the present case, review of the community-standards finding, which would ordinarily be difficult, is even more difficult than necessary.

The case before us is an appeal from a forfeiture proceeding, brought under 19 U.S.C. § 1305.[1] The terms of that section of the Tariff Act allow customs officials to seize material believed to be obscene at the point at which it enters the United States. The United States Attorney for the district in which it is seized is directed to bring the material into the district court for a determination of obscenity. If the district court determines that it is obscene, it is adjudged forfeit, and ordered destroyed.

District court proceedings under the Act are *in rem*. The addressees for whom the material is intended are notified but rarely appear to contest the government's action. Nevertheless, the government is required by the statute to secure a determination of obscenity, and the destruction order does not issue by default. The result is an essentially non-adversarial hearing in which the trier of fact is called upon only to decide whether or not the government has made its case. Although a jury may be requested, trial is often, as here, without a jury.

All of these aspects—the definition of obscenity, the requirements of the statute and the nature of an uncontested *in rem* proceeding—have come together in the § 1305 hearing in such a way as to make review of such a decision extraordinarily difficult. Somewhat frustrated in our effort to balance the requirements of the statute and the standards of the community against the rights of those directly and indirectly affected by forfeiture decrees, we have not received much help from the findings of the trial court or from the evidence the government has adduced.

Faced with a similar problem the Second Circuit, in *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102*, 709 F.2d 132, 136 (2d Cir.1983), sonable, was "virtually shielded from appellate scrutiny." Although we find this approach tempting, we think we should decline to follow it—at least in its full implications. Although the present case is before us on a finding of non-obscenity, the standard of review we adopt would, of course, apply equally if a determination of obscenity were appealed. Either way, the considerations at stake are sufficiently weighty to make abandonment of review by this court undesirable. *See Smith v. United States*, 431 U.S. 291, 305–06, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977); *Amato v. Divine*, 558 F.2d 364, 365 (7th Cir.1977).

So that review in these cases will not be illusory, therefore, and to bring some rationality into these proceedings, we set down the following guidelines.

### III.

■ In a § 1305 action, as always, the district court must set out findings of fact

---

1. The relevant parts of 19 U.S.C. § 1305 are as follows:

    All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, ... picture, drawing or other representation .... [A]ll such articles ... shall be subject to seizure and forfeiture as hereinafter provided....

    Upon the appearance of any book or matter at any customs office, the same shall be seized and held by the appropriate customs officer to await the judgment of the district court.... Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and it shall be destroyed.

and conclusions of law separately, in accordance with Rule 52 of the Federal Rules of Civil Procedure. The reasons for this rule—to help the appellate court when review is necessary, to provoke care on the part of the district judge and to make definite what is decided for res judicata reasons, *Featherstone v. Barash*, 345 F.2d 246 (10th Cir.1965); Advisory Committee Notes to Rule 52—are all especially relevant in cases of this sort. We have already stressed the difficulty of review. We also believe that it will be helpful to the district judge to set out in more or less measured terms a decision that will inevitably tend to be influenced by irrational factors. And finally, we believe that res judicata could pose a special problem here. It has been held that a finding of obscenity as to an article would be res judicata (in the same community, presumably) for subsequent importations of that same article. *United States v. Various Articles of Obscene Merchandise, Schedule No. 2098*, 536 F.Supp. 50, 53 (S.D.N.Y.1981). The court reasoned in that case that since forfeiture proceedings were *in rem* it was the character of the material, not the identity of the addressee, that was significant. The possibility that uncontested findings of obscenity will preclude litigation by other addressees makes explicit findings and conclusions all the more desirable.[2]

In its findings the district court should give consideration to the government's evidence. If the judgment ultimately rests, one way or the other, on that evidence, the district court ought to indicate the relationship between the evidence and the judgment. If the evidence simply fails to convince, the court should say why. The judgment may of course rest ultimately on the district court's own knowledge of community standards. Insofar as it does, we think there must be some articulation of the court's sense of those standards.

■ The government, of course, is under no constitutional obligation to provide evidence of community standards. *Hamling v. United States*, 418 U.S. 87, 104, 94 S.Ct. 2887, 2900, 41 L.Ed.2d 590 (1974); *United States v. Thoma*, 726 F.2d 1191, 1200 (7th Cir.1984). The material, if hard core, may be left to speak for itself. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1983). If the government does not present evidence, however, it must be prepared to have the district court declare that, by its lights, the material is not self-evidently offensive to the community. *Various Articles, Schedule 2102, supra*, 709 F.2d at 136. Were the government to let its case depend in this way on the district judge's intuitions, findings of offensiveness would indeed be "virtually unreviewable."

■ If the government does choose to introduce evidence of community standards, it should be prepared to do its homework. "Canned" surveys covering national or large geographical areas are usually inadequate. If surveys are to be used, they must be taken in the relevant area; they must address material clearly akin to the material in dispute, and they must be good studies by the usual standards. Evidence of availability—or rather the lack of availability—of similar material can also be used, although availability and non-availability do not translate inexorably into acceptability and unacceptability. *Various Articles Schedule No. 2127, supra*, 705 F.2d at 44.

The district judge is not bound by any of this evidence.[3] *Various Articles, Schedule No. 2102, supra*, 709 F.2d at 135. The judge may decide that the government has not made a prima facie case, or may simply disagree with the government's conclusions. If the government has presented

**2.** While the findings and conclusions may of course be oral, as long as they are specially indicated to be findings and conclusions, it may be worth observing that the article that caused the rule to be amended to allow oral findings mentioned especially the adversarial features of trial, which are absent here. Christensen, A

Modest Proposal, 64 A.B.A.J. 693 (1978); *see* Notes to the 1983 Amendment.

**3.** Although state law is also sometimes considered evidence of community standards, we do not find the Illinois statute too helpful.

evidence, however, the possibility of review depends upon the district judge's consideration of the evidence and his articulation of his reasons for accepting or rejecting it.

We suggest, finally, that some consideration be given in appropriate cases to appointment by the court of an amicus for the purpose of balancing the government's case.

## IV.

█ In the case before us, although the district judge has said a number of useful things, he has fallen somewhat short of providing fully adequate findings of fact or conclusions of law (either orally or in writing). He has not addressed the government's evidence, aside from describing the material to be destroyed.

For the most part, he seems to have relied on the availability in the relevant community of similar materials. We have already noted that availability is not simply to be equated with acceptability, although there is, of course, an obvious linkage. But the problem here goes somewhat deeper than that. For the one specific availability determination that the district court did make seems to us to be clearly erroneous.

Thus, in connection with "Dream Boy 2" the district court stated:

> It's a book of pictures of young nude males, fairly young. But on the newsstands today there are magazines that portray exactly the same thing. * * * The Playgirl Annual, for instance, which is available on any newsstand, portrays exactly the same thing .... There is virtually no difference between "Dream Boy" and the Playgirl Annual ... except for the fact that there are a picture or two in "Dream Boy" that depicts male ejaculation.

We believe that this finding misses the mark because (1) the Playgirl Annual, un-

like "Dream Boy 2", contains no pictures of masturbation and the men's genitals photographed in the Playgirl Annual are for the most part flaccid; (2) the explicit photographs of male ejaculation in "Dream Boy 2" provide a major distinction; (3) "Dream Boy" contains many close-ups of the male sex organ which are not found in the Playgirl Annual; (4) the back cover of "Dream Boy 2" contains four photographs of fellatio, but there are no photographs of explicit sexual contact in the Playgirl Annual; (5) the Playgirl Annual, unlike "Dream Boy" contains a number of serious articles on non-prurient subjects; and (6) the models in Playgirl appear to be adult men while the models in "Dream Boy" are not men, but adolescent boys. Although we do not expect the district court to make fine distinctions in evaluating allegedly pornographic material, to ignore significant differences is to be guilty of a fallacy under which the line between obscenity and non-obscenity is impossible to draw.

The government is not blameless here. Indeed the evidence it has offered is barely relevant. The survey results offered were taken from a national poll; the most specific breakdown was for the Midwest as a whole, and therefore seems far too general to amount to persuasive evidence of community acceptance. Similarly, three of the eleven cases offered by the appellant in support of its definition of community acceptance do not concern the local community involved in this case under any definition of that term. *See People v. Ridens,* 59 Ill.2d 362, 321 N.E.2d 264 (1974), *cert. denied,* 421 U.S. 993, 95 S.Ct. 2000, 44 L.Ed.2d 483 (1975) (Rockford and Moline); *City of Belleville v. Morgan,* 60 Ill.App.3d 434, 17 Ill.Dec. 558, 376 N.E.2d 704 (1978) (Belleville); *Sedelbauer v. Indiana,* 428 N.E.2d 206 (Ind.1981), *cert. denied,* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982) (Allen County, Indiana).[4]

---

4. The district court did not clearly err in limiting the scope of the relevant community to the City of Chicago. On remand, however, the district court may wish to give additional consideration to the question of scope with the possibility in mind that a larger community, such as the Chicago metropolitan area or the Northern District of Illinois, may be more suitable. We believe, however, that the City of Chicago is sufficiently large and diverse to constitute an adequate community for this purpose.

In vacating the decision below we voice no opinion as to the obscenity of the material involved. In particular, in commenting on the district judge's use of availability evidence we do not mean to suggest that the district court may not take into account, in addition to whatever evidence is presented by the parties, its own sense of what the standards of the relevant community are. *Various Articles, Schedule No. 2102, supra,* 709 F.2d at 135–36. Even if the judge relies on his own sense of things, however, he must make every effort to articulate those standards in a way that will make review in this court possible.

## V.

The order of the district court is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.