**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF MERCHANDISE, SEIZURE NO. 187, Defendant.**

**No. 85 C 6733.**

United States District Court,
N.D. Illinois, E.D.

Jan. 7, 1986.

Patrice Scully, Spec. Asst. U.S. Atty., Chicago, for plaintiff.

Alan R. Hirsch, pro se.

Memorandum

LEIGHTON, District Judge.

On July 19, 1985, the United States Customs Service seized four pictorial magazines from the international mails. They were WONDERBOY 48, DREAMBOY 6, NEW ANIMAL ORGY 16, FILM INDEX 83; and had been mailed to three separate individuals in the United States from the Netherlands and Denmark. On July 29, 1985, the United States Attorney instituted this civil *in rem* action, seeking forfeiture

and destruction of all four magazines. The government alleges that they are obscene and were imported into the United States in violation of federal law.

I

The Tariff Act of 1930, as amended (19 U.S.C. § 1305), authorizes the Customs Service to seize "any obscene book" imported into the United States. After seizure, the government must obtain a determination from the United States District Court sitting in the jurisdiction where the materials were seized, that the seized articles are in fact obscene. If the district court determines that the material is obscene, an order may issue for the forfeiture and destruction of the materials.

Service of the government's complaint in the present case was effected by publication, with a copy of the notice sent to each of the three addressees in this case. In a reply entitled, "Claim for Articles Seized by U.S. Customs" dated August 7, 1985, Alan R. Hirsch ("Claimant") claimed two of these magazines: WONDERBOY 48 and DREAMBOY 6, as his "own obtained for [his] private use exclusively." Claimant requested an impartial hearing before the district court to determine whether these magazines were obscene. In Claimant's "Answer to Complaint for Forfeiture" dated August 19, 1985, he alleges that the two magazines were sent for his private and exclusive use and that the magazines do not meet the relevant tests for obscenity. No claims were filed for the magazines entitled, NEW ANIMAL ORGY 16 and FILM INDEX 83, even though notices were sent to the two addressees.

For the reasons set forth below, the court finds that the magazines in issue here are obscene under the test for obscenity as enunciated by the Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Because the materials are obscene, they were thus imported into the United States in violation of the Tariff Act of 1930, and should be forfeited, condemned, and destroyed.

It is well recognized that material found to be obscene is not protected under the First Amendment. New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); United States v. Langford, 688 F.2d 1088, 1091 (7th Cir.1982), cert. denied 461 U.S. 959, 103 S.Ct. 2433, 77 L.Ed.2d 1319 (1983); United States v. Various Articles of Merchandise, Seizure No. 170, 750 F.2d 596, 597 (7th Cir.1984). But prior to a denial of First Amendment protections, the court must determine that the materials in question are, in fact, obscene. The Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), set out a three-part test [to be used when determining whether a particular article is obscene]. The three-part standard enunciated in Miller is as follows: (1) whether the average person, applying contemporary community standards, would find that the work taken as a whole, appeals to the prurient interests; (2) whether the work depicts or describes sexual conduct in a patently offensive manner; and (3) whether the work taken as a whole lacks serious literary, artistic, political, or scientific value. If a particular work meets each of these tests, it may then be condemned as obscene. Seizure No. 170, 750 F.2d at 597.

In this case, the government has submitted these four magazines to the court alleging that they are obscene. The government has chosen to submit the material claiming that the magazines speak for themselves. The government relies on the belief that the court can determine, through an examination of these magazines, whether they are, in fact, obscene under the Miller standards set forth above. Paris Adult Theater I v. Slaton, 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1972); United States v. Thoma, 726 F.2d 1191, 1200 (7th Cir.1984). In this way, the government is not required to provide evidence of community standards but can rely on the "district court's own knowledge of community standards." Seizure No. 170, 750 F.2d at 599.

The court is required to make a determination regarding the obscenity of all four

works even though only one of three addressees has filed a claim. As the Seventh Circuit recently stated, "the government is required by statute to secure a determination of obscenity, and the destruction order does not issue by default." *Various Articles of Merchandise, Seizure No. 170, supra,* 750 F.2d at 599.

## II

In arriving at the conclusion that each of the four works presented is obscene, this court examined each of them. Therefore, it is necessary to set forth, in a general way, what this examination revealed as to the contents of each.

NEW ANIMAL ORGY 16 is a largely pictorial magazine devoted to various acts of bestiality. There are various photographs depicting actual or imminent perverse sexual contact between humans and various animals. The limited textual material, presented in three languages including English, serves only to describe in graphic terms the activities clearly depicted in the photographs. The activity depicted as "unnatural couplings," served only to increase the overall offensiveness of the whole magazine.

FILM INDEX 83 is also a predominantly pictorial magazine. The work consists of a collection of still photographs depicting certain scenes from numerous hard core sex films. The pictures contained in this work include almost every conceivable variation of sexual conduct and contact. The work includes photographs of sexual intercourse, group sex, and anal intercourse, fellatio, cunnilingus, and the use of various mechanical devices. Most of the photographs clearly depict a specific type of sexual activity. Many of the photographs show only the model's genitals and focus on actual penetration and other sexual contact. The magazine also contains photographs of males directing semen onto the faces of females pictured. What small amount of textual material that is included serves only to dispel any doubt the reader may have as to the activity depicted.

WONDERBOY 48 is also largely a pictorial magazine. The textual material, less than one-sixth of the contents of this magazine, is printed in a foreign language. The photographs contained in this work are of adolescent males engaged in various sexual activities. The photographs depict fellatio, mutual masturbation, anal intercourse, and impending analingus. In all of the photographs, the models' genitals are prominently displayed and are often the sole focus of the photograph. The poses assumed by the models, and their facial expressions, are designed to impart an overall impression of sexual lust.

DREAMBOY 6 is a completely pictorial work with the exception of the title and a few lines inside the front cover about the publisher. The single model in this magazine also appears to this court to be an adolescent male. All of the photographs in this magazine have as a focal point the boy's genitals, and some of the photographs show only the genitals. The photographs contained in this magazine depict various scenes of masturbation and other lewd exhibition of the boy's erect penis.

## III

With the general nature and content of these works considered, we turn next to an application of the three-part *Miller* standard.

### A

The first determination this court must make is whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest. The court, in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), when it defined obscene material, said that such was "material which deals with sex in a manner appealing to prurient interest." *Id.* at 487, 77 S.Ct. at 1310. In a footnote, the court described this as "material having a tendency to excite lustful thoughts." *Id.* at 487, n. 20, 77 S.Ct. at 1310, n. 20.

Different works, depicting both the usual and the unusual, cannot be evaluated in the

same manner. The Supreme Court recognized this is *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). The material at issue in *Mishkin* depicted deviate sexual practices; the defendant contended that they, therefore, would not appeal to the prurient interest in sex of the average person. The court rejected this contention and said that a determination of prurient appeal must be made according to the group for which it was intended.

Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group. *Mishkin*, 383 U.S. at 508–9, 86 S.Ct. at 963–64.

Thus, the material must have a "tendency to excite lustful thoughts" in the audience to which it is directed.

Based on this understanding of the first criteria in *Miller*, this court must decide whether the works at issue in this case appeal to the prurient interest. FILM INDEX 83 seems to offer something for everyone, no matter what the person's sexual proclivities, whether they be usual or unusual. It depicts sexual intercourse between males and females, but also contains depictions of more unusual sexual activity such as bondage, group sex, and anal intercourse. Based on viewing this work and based on how the average person in the community would view it, the court has no trouble concluding that this work, taken as a whole, appeals to the prurient interest.

After examining NEW ANIMAL ORGY 16, the court is of the opinion that most people in the community would find the scenes depicted to be disgusting and of no appeal at all. But as instructed by *Mishkin*, the court must consider whether this

material would appeal to the prurient interest of the audience to which it is directed. The appropriate group by which to measure prurient appeal would therefore be those persons with an interest in acts of bestiality. Although the court finds it difficult to believe that this type of activity appeals to anyone, it is clear that this material would not be produced and offered for sale if there were not some people who wished to purchase it. In considering the photographs in conjunction with the descriptive textual material, we can only conclude that this material is intended to appeal to the prurient interest in sex of that group of people interested in sexual activity with animals.

DREAMBOY 6 and WONDERBOY 48 are also intended to, and would, appeal to the prurient interests of some groups of individuals. WONDERBOY 48, depicting scenes of fellatio and anal intercourse between two male adolescents, would appeal to certain groups of homosexual males. The acts depicted, and the lewd exhibition of the boys' genitals, as well as the facial expressions of the boys, leave little doubt as to the intended effect on the viewing audience. Similarly, DREAMBOY 6, although not depicting any type of sexual contact between two people, is nevertheless intended to appeal to a prurient interest in sex. This work contains photographs of a lone adolescent male engaged in various acts of masturbation and other lewd exhibition of his genitals. No descriptive textual material is present, but the boy's facial expressions and the series of unnatural and contrived poses lead unfailingly to the conclusion that sexual stimulation is the dominant intent of this work.

The court therefore concludes that all four of these works are intended to, and would, appeal to some individuals' prurient interest in sex. Certainly, not all four would appeal to the same audience, but this is not a necessary requirement to meet the first prong of the *Miller* test.

B

The second distribution which this this court is required to make is whether the

work depicts or describes sexual conduct in a patently offensive manner. Again, the court is required to view this material based on its knowledge of the relevant community standards to determine if the work would be patently offensive to the average person in the community. The choice of the relevant community in order to determine what standards should apply in this consideration was recently discussed in *United States v. Various Articles of Merchandise, Seizure No. 170,* 750 F.2d 596, 600 (7th Cir.1984). There, the Seventh Circuit said that the "City of Chicago is sufficiently large and diverse to constitute an adequate community" for the purpose of defining the relevant community standards. *Id.* at 600, n. 4. But the court of appeals also suggested that the Chicago metropolitan area, or even the Northern District of Illinois, may be the appropriate area to consider. This court is of the opinion that it should consider, at least, the Chicago metropolitan area in its determination due to the ease of transportation and the large amount of interaction between the residents of the City of Chicago and residents of the surrounding communities. It is in defining these standards that the most difficult problem is posed. The concern here is with the average person, and the type of material found patently offensive by that person. Concern is not with the most hardened nor the most prudish person in the relevant community.

The court, in *Miller,* provided examples of what could be regulated as obscene: (1) "patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; and (2) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Miller,* 413 U.S. at 25, 93 S.Ct. at 2615. Clearly, the materials at issue in this case depict or describe the types of activities listed by the court, and which may be the subject of regulation or in the present case condemnation. The only question this court must answer is whether the depictions and descriptions are patently of-

fensive to the average person in the community.

Considering NEW ANIMAL ORGY 16, the court has no hesitation in determining that this magazine depicts and describes actual and perverted sexual conduct in a patently offensive manner. The court's knowledge of the standards held by the average person in the Chicago metropolitan area require the conclusion that the depictions in NEW ANIMAL ORGY 16 would be offensive to these people. There is no requirement, in determining whether material is offensive, to focus on any particular deviant sub-group as was done when determining prurient appeal. Rather, it is offensiveness based on the attitudes held by a representative cross section of this community. Here, the mere discussion of this type of activity, and especially the pictorial representation of it, would be offensive to the great majority of people in the Chicago metropolitan area.

FILM INDEX 83, taken as a whole, would also be patently offensive to the average person's sense of decency and morality. As stated by the court in *Miller,* to classify a work as obscene, that work must depict or describe some type of sexual conduct. Thus, photographs of nude models, without more, would fall outside this classification. While a few of the photographs in FILM INDEX 83 are of this type, that is, photographs of nude models not engaged in any sexual activity, the great majority of the photographs depict either actual, imminent, or simulated sexual conduct. Many of the pictures contain lewd exhibitions of the models' genitals, both male and female. But the majority of the photographs are much more explicit. They clearly depict sexual conduct which has previously been found to be patently offensive to the average person in Illinois.

In *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091, 1093 (7th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984), the court implicitly found that "magazines, movies, and video tapes containing depictions or portions thereof of the following: cunnilingus, fellatio, anal inter-

course, vaginal intercourse, excretion of semen from penis onto other persons, masturbation, vaginal or anal insertion of prosthetic devices, insertion of tongue into anus ..." are materials that will be patently offensive to the average person in Illinois.

While the Chicago metropolitan area probably is the most liberal community in Illinois, it is hard to believe that the average person in this progressive community could view this material without being offended. This court's own sense of decency is offended by the scenes depicted in this magazine. The photographs and accompanying text depicts various forms of sexual conduct in base and vulgar fashion.

■ The court is aware that this type of magazine is available in certain areas of this community. But, mere availability is not synonymous with a community-wide standard. FILM INDEX 83, taken as a whole, is clearly offensive material, and thus meets the second test of the *Miller* standard.

Finally, this court will consider the two magazines for which a claim has been made, WONDERBOY 48 and DREAMBOY 6. The court has examined the contents of each magazine and has considered each of them independently. But because the conclusions concerning each one is the same, and because Claimant has made the same arguments as to each, without distinction, reference to the magazines individually will be made only when the discussion requires it.

Both of these magazines contain the type of depictions that have previously been found to be subject to regulation. DREAMBOY 6 shows an adolescent male in various scenes of masturbation and in other lewd exhibitions of his genitals. WONDERBOY 4 shows scenes of fellatio and anal intercourse, clearly "ultimate sexual acts," and also lewd exhibitions of the boys' genitals. The question this court must answer is whether the photographs show this in a patently offensive manner according to relevant community standards.

Claimant raises several arguments in response to the government's motion for a decree of forfeiture. First, he objects to the government's characterization of the models as "adolescent boys." Claimant asserts that in the absence of evidence supporting this characterization, the court must consider the models to be adult males. As the government correctly points out, this is not a case concerned with child pornography. The court here is only making the determination of whether this material is obscene. The age or apparent age of the models is relevant only to the question of whether this material is offensive to the average person.

However, examination of the material leads to the conclusion that the models, in both, are adolescents. The overall physical development and the adolescent facial features of the models are taken into consideration in arriving at this conclusion. That the publisher's intent to make the models appear as adolescents is also important. The titles of these magazines are relevant in this regard, as both contain the word "boy" as part of the title. Although the background of the pictures is not well defined, the overall impression imparted was that the models were in surroundings more often associated with adolescents than with adults. Taken as a whole, the intention of these publications was to portray the models as adolescents.

The apparent ages of these models is important in considering the overall offensiveness of these magazines because the average person in the community would find material depicting adolescents in these activities more offensive than similar material depicting adults likewise engaged. This is not to imply that if the models here depicted were without doubt adults, that this court would find them non-obscene. On the contrary, the materials would be obscene without regard to the ages of the models. This court's view is that young people should not be exposed to this material, let alone be the subject and model for it. The average person has ideas of the type of activities young people should be engaged in, and this does not include par-

ticipating in explicit and, in the case of WONDERBOY 48, unnatural sexual activities. The court concludes therefore that both WONDERBOY 48 and DREAMBOY 6, without other considerations, would be offensive to the average person in this community.

Claimant notes that similar material is available at three stores located within fifteen minutes of his residence. Claimant argues that this availability is at least circumstantial evidence of the community standard in regard to this material. This argument fails for two reasons. First, Claimant describes his comparison material as containing adult models engaged in various sexual activities. This alone would serve to adequately distinguish the material viewed by the court in this case. The two magazines in issue here contain photographs of adolescents. In distinguishing comparison materials in a recent case, the Seventh Circuit Court of Appeals found that the age difference of the models in the two works was a significant factor to consider. *United States v. Various Articles of Merchandise, Seizure No. 170*, 750 F.2d 596, 600 (7th Cir.1984).

Second, in the present case, Claimant merely asserts the conclusion that the materials in issue and those he has referred to are similar. This court is unable to accept these conclusions without more; Claimant has neither listed the titles of these works nor offered this material to the court for comparison. In *United States v. Womack (II)*, 509 F.2d 368 (D.C.Cir.1974), considering comparison materials, the court cautioned that even minor variation in the manner of presentation could lead to different interpretations. *Id.* at 378. The court takes this to mean that comparison materials would need to be virtually identical to support the type of argument Claimant makes here.

Claimant also makes the argument that availability of the material is evidence of community acceptance, and thus evidence of the community standard by which this court must judge the offensiveness of the material. There are many decided cases

that have rejected the argument that mere availability of similar material is synonymous with a community standard of acceptance. *Hamling v. United States*, 418 U.S. 87, 125–26, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974) (availability does not mean community acceptance); *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102 (I)*, 678 F.2d 433, 434 (2d Cir.1982) (material being "visible on every street corner" not synonymous with its acceptance of items as not patently offensive); *United States v. Various Articles of Obscene Merchandise, Schedule No. 2127*, 705 F.2d 41, 44 (2d Cir.1983) ("mere availability of similar material by itself means nothing more than that other persons are engaged in similar activities"); *United States v. Various Articles of Merchandise, Seizure No. 170*, 750 F.2d 596, 599 (7th Cir.1984) (availability is not simply to be equated with acceptability).

In any event, the availability asserted by Claimant here falls far short of indicating community acceptance. Claimant indicates that similar material is available in three bookstores, all located within fifteen minutes of his residence. Availability of similar material in a relatively small area of the City of Chicago does not indicate a widespread community acceptance.

Based on the foregoing, the court concludes that the average person in the Chicago metropolitan area would find that the material contained in these two magazines is offensive when taken as a whole. This is true based on the ages of the models as determined by this court and also because of the types of activities depicted. The photographs exhibit not only unnatural sexual conduct but also lewd and distasteful exhibitions of the models' genitals. On the whole, they both represent sexual conduct in a base and vile manner.

C

The final prong under the *Miller* test is whether the work taken as a whole lacks serious literary, artistic, political, or scientific value. Claimant in this case has not

asserted that WONDERBOY 48 or DREAMBOY 6 contain any serious literary, artistic, political, or scientific value. This court does not believe that he could reasonably make such an argument.

DREAMBOY 6 is totally devoid of accompanying textual material and thus could not claim literary or political value. The quality of the photography and the backgrounds being haphazard, rather than well planned, indicate that no serious artistic merit was intended. Further, there is nothing in any of the photographs that would prompt this court to believe there is any scientific value in this magazine.

The same comments can be made regarding both FILM INDEX 83 and NEW ANIMAL ORGY 16. Both of these contain some textual material, but the text is completely devoted to describing the sexual activity occurring in the photographs. No ideas of a political nature are imparted to the reader, and the reader soon realizes that this written description is not literature of any form. There is nothing of an artistic or scientific value at all in either magazine.

Although the same conclusion is reached regarding WONDERBOY 48, it is necessary to discuss the reasoning here in more detail. This magazine contains some textual material written in a foreign language. This court cannot read this material and the government has not provided a translation or indicated to this court the substance of this text. In *United States v. Miscellaneous Pornographic Magazines, Pieces of Pornographic Ad Matter with Hard Core Illustrations and Films*, 526 F.Supp. 460 (N.D.Ill.1981), the court determined that under some circumstances, foreign language text must be translated, as the text may be able to "save" otherwise obscene publications (citing *Kois v. Wisconsin*, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972)). But the court recognized that *Kois* would not always require translation.

The question then is whether the text could save the pictures. The court has no doubt in concluding that the text here could not save these photographs of adolescent

boys engaged in various unnatural sexual conduct. The average person in the community would find this magazine as a whole offensive, even if the text related a story of a non-sexual nature. The work, taken as a whole, lacks any serious literary, artistic, political, or scientific value.

For all of the foregoing reasons, the four magazines seized by the United States Customs Service are obscene and must be destroyed.